STATE OF NORTH CAROLINA v. ROGER EARL COLEY

No. COA07-645

(Filed 4 November 2008)

**1. Constitutional Law— competency to stand trial—due process—findings of fact incorporating factual summary from detailed psychiatric report**

The trial court did not abuse its discretion in a first-degree murder case by finding that defendant was competent to stand trial because: (1) there was no authority prohibiting the court from making findings of fact incorporating a factual summary from a detailed psychiatric report in lieu of listing the facts in the traditional manner; (2) evidence that a defendant suffers from mental illness is not dispositive on the issue of competency; (3) the record contained evidence that defendant possessed the capacity to comprehend his position, understand the nature of the proceedings against him, conduct his defense in a rational manner, and cooperate with his counsel; (4) although the defense produced evidence to the contrary, the trial court was presented with sufficient evidence at the competency hearing to sustain a conclusion that defendant was competent to stand trial; and (5) although two doctors differed as to the significance of defendant's rambling, the State's expert witness provided the trial court with sufficient evidence to suggest that defendant was capable of standing trial despite his tendency to ramble in response to questioning.

**2. Jury— voir dire—inquiry into whether any jury members had prior unfavorable experiences with attorneys**

The trial court did not abuse its discretion in a first-degree murder case by sustaining objections to questions posed by defense counsel to prospective jurors during the voir dire hearing as to whether any of the jury members had prior unfavorable experiences with attorneys because: (1) despite defendant's claims, he made no showing that the trial court's failure to allow defense counsel's question resulted in any undue prejudice to defendant; and (2) a review of the record revealed that the trial court's decision not to allow defense counsel's question did not deprive defendant of his right to an impartial jury.

**3. Constitutional Law— right to remain silent—detective testified defendant invoked Fifth Amendment right**

The trial court did not commit plain error in a first-degree murder case by allowing the prosecutor to elicit testimony indicating that defendant invoked his constitutional right to silence when questioned by police because: (1) although the detective erred by testifying defendant invoked his Fifth Amendment right to silence, the State did not elicit this testimony for the purpose of attacking defendant's guilt or credibility; (2) the detective provided the information to explain his subsequent actions regarding defendant; (3) although it may be true that defendant's credibility was at issue during trial, the trial court was presented with substantial evidence tending to support defendant's conviction; and (4) defendant failed to show that the introduction of the detective's statement amounted to a miscarriage of justice or that a different verdict probably would have been reached but for the introduction of this testimony.

**4. Homicide— first-degree murder—request for instruction on lesser-included offense—voluntary manslaughter based on imperfect self-defense**

The trial court did not err in a first-degree murder case by denying defendant's request for an instruction on voluntary manslaughter based on imperfect self-defense because: (1) viewed in the light most favorable to defendant, defendant's testimony was insufficient to demonstrate defendant reasonably believed it was necessary to kill his wife to save himself from great bodily harm; (2) although the wife victim threatened defendant and reached for a knife, defendant's own testimony revealed that defendant was able to secure the weapon before the wife could reach it; (3) once the weapon was secure, defendant was no longer in imminent danger from his wife; (4) even if defendant believed it was necessary to kill his wife to avoid great bodily harm, that belief was unreasonable; and (5) a review of the record revealed that defendant presented no evidence at trial to warrant a jury instruction of imperfect self-defense.

Judge GEER dissenting.

Appeal by defendant from judgment entered 2 August 2006 by Judge W. Russell Duke, Jr., in Edgecombe County Superior Court. Heard in the Court of Appeals 28 November 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Joan M. Cunningham, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant appellant.*

McCULLOUGH, Judge.

Defendant appeals judgment entered after a jury verdict of guilty of first-degree murder. We determine there was no prejudicial error.

## FACTS

On 7 March 2005, Roger Earl Coley ("defendant") called 911 from his house at 410 Myrtle Avenue in Rocky Mount, North Carolina, and reported that he had stabbed his wife, Deborah Thompson Coley, with a butcher knife. When the operator inquired as to how many times he had stabbed his wife, defendant responded that he had stabbed her "about twenty times." Officer Brian Patrick Livecchi of the Rocky Mount Police Department arrived at defendant's house a short time later. At the time Officer Livecchi arrived, defendant was standing on the porch with blood on his clothes. Officer Livecchi then handcuffed defendant and asked him what happened. Defendant responded, "I stabbed her." After handcuffing defendant, Officer Livecchi entered the residence and found Mrs. Coley leaning against a sofa. She was bleeding from her chest. Officer Livecchi took her pulse, and after determining the scene was secure, called the dispatcher to alert the firemen and paramedics.

After other police officers arrived, Officer Livecchi placed defendant in the back of his police car and drove him to the Rocky Mount Police Department. On the way to the police department, defendant made several statements. Defendant stated that "he just simply couldn't take it anymore" and that "she never gave him any respect." At the police station, defendant was informed of his *Miranda* rights by Detective Thomas Seighman. Defendant responded that he wanted to speak to an attorney. Despite defendant's invocation of his right to silence, defendant continued to make statements. Defendant was then allowed to make several phone calls, which were recorded by a video camera set up inside the police station. During one of these phone calls, defendant described the circumstances surrounding Mrs. Coley's stabbing.

Kevin Bissette, a member of West Edgecombe Rescue Squad, arrived shortly after Officer Livecchi. Mr. Bissette examined Mrs.

Coley and determined that she had no pulse. Mrs. Coley was then transported to the hospital as emergency personnel attempted to resuscitate her. These efforts proved unsuccessful, and Mrs. Coley died while being transported to the hospital.

A grand jury indicted defendant for first-degree murder on 23 May 2005. On 26 April 2006, a competency hearing was held before Judge Frank R. Brown in Edgecombe County Superior Court. After hearing the evidence, Judge Brown concluded defendant possessed sufficient capacity to proceed to trial. Defendant was tried before a jury for the murder of his wife, Deborah Coley, on 31 July 2006, in Edgecombe County Superior Court, Judge W. Russell Duke, Jr., presiding. On 2 August 2006, defendant was convicted of first-degree murder and sentenced to a term of life in prison without the possibility of parole. Defendant now appeals.

I.

[1] Defendant first argues the trial court erred by finding defendant competent to stand trial. We disagree.

"[T]he conviction of an accused person while he is legally incompetent violates due process[.]" *State v. Taylor*, 298 N.C. 405, 410, 259 S.E.2d 502, 505 (1979); *Pate v. Robinson*, 383 U.S. 375, 378, 15 L. Ed. 2d 815, 818 (1966). Our General Statutes expound on this notion, providing:

> No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner. This condition is hereinafter referred to as "incapacity to proceed."

N.C. Gen. Stat. § 15A-1001(a) (2007); *see Taylor*, 298 N.C. at 410-11, 259 S.E.2d at 505. The determination of whether a defendant is competent to stand trial rests within the trial court's discretion and the burden of persuasion falls upon the defendant. *State v. Pratt*, 152 N.C. App. 694, 697, 568 S.E.2d 276, 278 (2002), *cert. denied, appeal dismissed*, 357 N.C. 168, 581 S.E.2d 442 (2003). The trial court's findings of fact, as well as its final determination, will be upheld on appeal if supported by the evidence. *Id.* at 698, 568 S.E.2d at 279.

In the case at bar, an inquiry was held prior to trial to determine defendant's competency. During this hearing, the trial court was

STATE v. COLEY

[193 N.C. App. 458 (2008)]

presented with testimony from several expert witnesses. The State's expert witness, Dr. Charles Vance, an expert in forensic psychiatry, testified regarding his examination of defendant. According to Dr. Vance, defendant demonstrated an adequate knowledge of the nature and object of the proceedings against him, as well as of his position in relationship to these proceedings. Further, although Dr. Vance recognized that defendant suffered from dementia, which hindered him in his interactions with his lawyer, Dr. Vance opined that defendant's impairment was not so severe as to prevent him from working rationally and reasonably with his attorney. Thus, Dr. Vance was of the opinion that defendant was competent to stand trial. In response to the State's evidence, the defense proffered testimony from Dr. Katayoun Tabrizi, an expert in psychology. Dr. Tabrizi opined that in addition to suffering from dementia, defendant was also suffering from a psychotic mental illness that was not being treated. According to Dr. Tabrizi, these afflictions made defendant incapable of proceeding to trial.

At the conclusion of the hearing, the trial court entered an order holding that defendant possessed the capacity to proceed to trial. In this order, the trial court adopted as its findings of fact defendant's Forensic Psychiatric History And Evaluation/Legal Assessment/ Discharge Summary and Aftercare plan of Dorothea Dix Hospital for Roger Earl Coley ("evaluation"). Based on these findings, the trial court concluded that although defendant's mental defects "may complicate his interaction with his attorney" these defects "[were] not of sufficient magnitude to negate his capacity to stand trial[.]"

On appeal, defendant argues the trial court's determination of defendant's competency was in error. In support of his argument, defendant contends: (1) the trial court incorrectly adopted as its findings of fact defendant's evaluation; (2) the trial court was presented with no evidence at the preliminary hearing to support a conclusion that defendant was competent to stand trial; and (3) the defendant's trial testimony indicated that defendant did not possess the capacity to stand trial, regardless of the court's determination during the preliminary hearing.

1.

As noted above, the trial court was presented with testimony that supported the court's conclusion, which was:

THE COURT CONCLUDES from all the evidence presented; that the Defendant was cooperative with forensic interviews; that

he knew he was charged with 1st Degree Murder and has a clear recollection of the events associated with his criminal acts; that he showed an understanding of the nature of the legal proceedings as well as the court room personnel; that he was aware of pleas available and the significance of the pleas; that he suffers some degree of intellectual deficiency, but his I.Q. falls in the range of the upper 70s to the low 80s; that he has difficulty understanding hypothetical or abstract situations, but when language is simplified, he has the ability to grasp concepts and understand them; that the Defendant became excessively emotional when discussing his wife, but did not display similar problems with modulation in other contexts; that he has the ability to restrain himself and control his behavior when advised that such structure was needed to be imposed on the conversation; that his mental defects may complicate his interaction with his attorney, but are not of sufficient magnitude to negate his capacity to stand trial.

The question then becomes whether the trial court can adopt the facts as set forth in the psychiatric report in lieu of listing the facts in the traditional manner. We can find no authority prohibiting the court from making findings of fact by incorporating a factual summary from a detailed report.

We note that the court's findings of fact, if supported by competent evidence, are conclusive on appeal. *State v. Clark*, 300 N.C. 116, 265 S.E.2d 204 (1980). While the better practice is to make independent detailed findings of fact, *see State v. Aytche*, 98 N.C. App. 358, 363, 391 S.E.2d 43, 46 (1990), adopting facts set forth in the report was not prejudicial in this instance.

2.

"The test for capacity to stand trial is whether a defendant has capacity to comprehend his position, to understand the nature of the proceedings against him, to conduct his defense in a rational manner and to cooperate with his counsel[.]" *State v. Jackson*, 302 N.C. 101, 104, 273 S.E.2d 666, 669 (1981). "Evidence that a defendant suffers from mental illness is not dispositive on the issue of competency." *Pratt*, 152 N.C. App. at 697, 568 S.E.2d at 278. Our Supreme Court has noted that

a defendant does not have to be at the highest stage of mental alertness to be competent to be tried. So long as a defendant can confer with his or her attorney so that the attorney may interpose

any available defenses for him or her, the defendant is able to assist his or her defense in a rational manner. It is the attorney who must make the subtle distinctions as to the trial.

*State v. Shytle*, 323 N.C. 684, 689, 374 S.E.2d 573, 575 (1989).

Here, defendant asserts the trial court was presented with no evidence to support a conclusion that defendant was competent to stand trial. To the contrary, as previously discussed, the record contains evidence that defendant possessed the capacity to (1) comprehend his position, (2) understand the nature of the proceedings against him, (3) conduct his defense in a rational manner, and (4) cooperate with his counsel. Although the defense produced evidence to the contrary, we hold the trial court was presented with sufficient evidence at the preliminary hearing to sustain a conclusion that defendant was competent to stand trial.

3.

" '[A] trial court has a constitutional duty to institute, *sua sponte*, a competency hearing *if there is substantial evidence before the court* indicating that the accused may be mentally incompetent.' " *State v. Young*, 291 N.C. 562, 568, 231 S.E.2d 577, 581 (1977) (citation omitted).

Defendant further argues that regardless of his competency during the initial hearing, defendant's trial testimony provided evidence that defendant did not possess the capacity to stand trial. Thus, defendant contends the trial court erred by not conducting an inquiry into defendant's competence at trial. Upon review, we hold defendant has produced insufficient evidence to support this contention. The record on appeal indicates that, at trial, defendant appeared to ramble in response to questions imposed by counsel. However, such behavior was not a new occurrence, and had been present during defendant's examinations prior to the preliminary hearing. Dr. Vance had previously noted that defendant often seemed to ramble when he was examined prior to trial. Although Dr. Vance and Dr. Tabrizi differed as to the significance of this rambling, Dr. Vance provided the trial court with sufficient evidence to suggest that defendant was capable of standing trial despite his tendency to ramble in response to questioning. The fact, by itself, that defendant continued this behavior at trial, did not amount to substantial evidence that defendant was mentally incompetent at trial. Therefore, the trial court did not err by failing to institute, *sua sponte*, a second competency hearing. Accordingly, defendant's assignment of error is overruled.

STATE v. COLEY

[193 N.C. App. 458 (2008)]

## II.

[2] Defendant next argues the trial court incorrectly sustained objections to questions posed by defense counsel to prospective jurors during the *voir dire* hearing. Specifically, defendant argues the trial court erred by sustaining the State's objection to defense counsel's inquiry as to whether any of the jury members had prior unfavorable experiences with attorneys. We find defendant's argument to be without merit.

The trial court is responsible for ensuring that a competent, fair, and impartial jury is impaneled. *State v. Anderson*, 355 N.C. 136, 140, 558 S.E.2d 87, 91 (2002). "The nature and extent of the inquiry made of prospective jurors on *voir dire* ordinarily rests within the sound discretion of the trial court." *State v. Hill*, 331 N.C. 387, 404, 417 S.E.2d 765, 772 (1992), *cert. denied*, 507 U.S. 924, 122 L. Ed. 2d 684, *reh'g denied*, 507 U.S. 1046, 123 L. Ed. 2d 503 (1993). "The exercise of such discretion constitutes reversible error only upon a showing by the defendant of harmful prejudice and clear abuse of discretion by the trial court." *State v. Jones*, 347 N.C. 193, 203, 491 S.E.2d 641, 647 (1997).

In the case at bar, defense counsel sought to ask the jury, "Has anyone in the jury box had a bad experience with an attorney?" After the State's objection to this question was sustained, defendant attempted a reworded version of this question, asking: "Has anyone had a [sic] experience with an attorney that they believe would affect the way they hear the evidence in this case?" Once again, the State lodged an objection to defense counsel's question. After determining defendant in this case was not an attorney, the trial court again sustained the State's objection, preventing defense counsel from posing the aforementioned question to the jury. On appeal, defendant now contends that the trial court's action of sustaining the State's objection, and thus preventing defendant from posing this question to the jury, denied him the opportunity to have his case heard before a fair and impartial jury. Despite defendant's claims, he makes no showing that the trial court's failure to allow defense counsel's question resulted in any undue prejudice to defendant. Rather, defendant simply contends that the aforementioned question was proper and should have been allowed at trial. After reviewing the record, we hold the trial court's decision not to allow defense counsel's aforementioned question did not deprive defendant of his right to an impartial jury. Therefore, defendant's assignment of error is overruled.

**STATE v. COLEY**

[193 N.C. App. 458 (2008)]

## III.

**[3]** Defendant also argues the trial court committed plain error by allowing the prosecutor to elicit testimony indicating that defendant invoked his constitutional right to silence when questioned by police. We disagree.

It is well established "that the State may not introduce evidence that a defendant exercised his fifth amendment right to remain silent." *State v. Ladd,* 308 N.C. 272, 283, 302 S.E.2d 164, 171 (1983). If the defendant does not object at trial to the introduction of evidence regarding his silence, on appeal "the defendant has the burden of showing that the error constituted plain error, that is, (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *State v. Bishop,* 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997). "Erroneous admission of evidence may be harmless where there is an abundance of other competent evidence to support the state's primary contentions[] or where there is overwhelming evidence of defendant's guilt . . . [or] where defendant elicits similar testimony on cross-examination." *State v. Weldon,* 314 N.C. 401, 411, 333 S.E.2d 701, 707 (1985) (citations omitted).

In the case *sub judice,* defendant argues the State inappropriately referenced defendant's decision to invoke his right to silence. At trial, Detective Seighman testified that after defendant was informed of his *Miranda* rights, defendant invoked his right to silence and responded that "he would like to speak to an attorney." Detective Seighman further testified that despite defendant's invocation of his right to remain silent, defendant continued to make statements to Detective Seighman regarding his relationship with Mrs. Coley. Although he made no objection to Detective Seighman's testimony at trial, on appeal defendant contends that the introduction of this testimony amounted to plain error. Defendant argues that Detective Seighman's testimony regarding defendant's decision to invoke his right to remain silent served as an improper attack on defendant's credibility at trial. His credibility was pivotal, defendant argues, because his testimony surrounding Mrs. Coley's stabbing did not mirror his previous description of these events as shown to the court on a videotape. Thus, defendant argues evidence that he invoked his right to remain silent and to seek counsel from an attorney served to prejudice the jury against him and ultimately resulted in a guilty verdict. After reviewing the record, we are unpersuaded by defendant's arguments. It is true that Detective Seighman erred by testifying defendant

invoked his Fifth Amendment right to silence. However, the State did not elicit this testimony for the purpose of attacking defendant's guilt or credibility. Rather, Detective Seighman provided the information seemingly to explain his subsequent actions regarding defendant. Though it may be true that defendant's credibility was at issue during trial, the trial court was presented with substantial evidence tending to support defendant's conviction for the crime of first-degree murder. Defendant has failed to show that the introduction of Detective Seighman's statement amounted to a miscarriage of justice or that a different verdict probably would have been reached but for the introduction of this testimony. Therefore, we hold the trial court did not commit plain error by allowing Detective Seighman to testify regarding defendant's invocation of his Fifth Amendment rights.

IV.

[4] Defendant concludes by arguing that the trial court erred by denying defendant's request for an instruction on voluntary manslaughter. We disagree.

Voluntary manslaughter is defined as " 'an intentional killing without premeditation, deliberation or malice . . . [either] in the heat of passion . . . or in the exercise of imperfect self-defense where excessive force under the circumstances was used . . . .' " *State v. Lyons*, 340 N.C. 646, 663, 459 S.E.2d 770, 779 (1995) (citation omitted). Our Supreme Court has held that

> if defendant believed it was necessary to kill the deceased in order to save [himself] from death or great bodily harm, and if defendant's belief was reasonable in that the circumstances as they appeared to [him] at the time were sufficient to create such a belief in the mind of a person of ordinary firmness, but defendant, although without murderous intent, was the aggressor in bringing on the difficulty, or defendant used excessive force, the defendant under those circumstances has only the *imperfect right of self-defense*, having lost the benefit of perfect self-defense, and is guilty at least of voluntary manslaughter.

*State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981). Although voluntary manslaughter is a lesser included offense of first-degree murder, an instruction regarding voluntary manslaughter, based on a theory of imperfect self-defense, is not required " 'unless evidence was introduced tending to show that at the time of the killing, the defendant *reasonably* believed' it necessary to kill the

victim in order to save himself from imminent death or great bodily harm." *State v. Maynor*, 331 N.C. 695, 700, 417 S.E.2d 453, 456 (1992) (citation omitted); *see State v. Price*, 344 N.C. 583, 589, 476 S.E.2d 317, 320 (1996). This Court will consider the facts in the light most favorable to defendant to determine if the evidence presented at trial was sufficient to warrant an instruction regarding voluntary manslaughter based on imperfect self-defense. *See State v. Mize*, 316 N.C. 48, 51, 340 S.E.2d 439, 441 (1986).

In the case *sub judice*, defendant argues he presented sufficient evidence at trial to warrant the inclusion of a jury instruction of voluntary manslaughter on the grounds that defendant's actions amounted to imperfect self-defense. We find defendant's argument to be without merit. At trial, defendant testified that on the night she was stabbed, Mrs. Coley began to curse and threaten him. To prevent others from overhearing Mrs. Coley's insults, defendant testified that he closed the door to the house they were occupying. When defendant turned back to face Mrs. Coley, she had picked up the phone and was searching for the telephone numbers of two local drug dealers. In response, defendant walked up to Mrs. Coley and "knocked the phone out of her hand." Angered by defendant's behavior, Mrs. Coley threatened to hurt him and reached for a knife. Before Mrs. Coley could retrieve the knife, defendant testified that he "grabbed it and just stabbed her." Viewed in the light most favorable to defendant, defendant's testimony is insufficient to demonstrate defendant reasonably believed it was necessary to kill Mrs. Coley to save himself from great bodily harm. Although Mrs. Coley threatened him and reached for the knife, defendant's own testimony reveals that defendant was able to secure the weapon before Mrs. Coley could reach it. Once the weapon was secure, defendant was no longer in imminent danger from Mrs. Coley. Thus, even if defendant believed it was necessary to kill Mrs. Coley to avoid great bodily harm, that belief was unreasonable. A review of the record reveals defendant presented no evidence at trial to warrant a jury instruction of imperfect self-defense. We therefore hold the trial court did not err by denying defendant's request to submit a jury instruction regarding voluntary manslaughter based on a theory of imperfect self-defense.

No error.

Judge STEELMAN concurs.

Judge GEER dissents by separate opinion.

GEER, Judge, dissenting.

As the United States Supreme Court has emphasized, "[i]t has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri,* 420 U.S. 162, 171, 43 L. Ed. 2d 103, 112-13, 95 S. Ct. 896, 903 (1975). Because I believe the trial court did not make the findings of fact necessary to support a conclusion that defendant has the capacity to be tried, I respectfully dissent.

It is fundamental that a trial court's determination of competency must be supported by findings of fact that in turn must be supported by competent evidence. *See State v. Taylor,* 298 N.C. 405, 409, 259 S.E.2d 502, 505 (1979) ("The record reveals that the able trial judge, in accordance with G.S. 15A-1002(b)(3), conducted a pretrial hearing, found facts, and concluded that defendant had the mental capacity to proceed to trial. That conclusion is supported by the findings and the findings are supported by the evidence adduced at the hearing."). In this case, however, the trial court hearing the competency issue essentially abdicated its fact-finding role by expressly adopting the report of the State's expert witness—Dr. Charles Vance of Dorothea Dix Hospital—as its findings of fact. I do not believe that a trial court may delegate fact-finding in this manner.

Moreover, to the extent that the trial court made its own findings of fact, I do not believe that those findings address all of the issues necessary to determine whether defendant had the capacity to stand trial. Further, other portions of the order are not supported by competent evidence. As our state Supreme Court has acknowledged, due process requires a procedure that must "jealously guard[] a defendant's right to a fair trial." *Id.* at 410, 259 S.E.2d at 505 (internal quotation marks omitted). A critical part of that procedure is a trial court's thoughtful fact-finding. Indeed, in the absence of such findings, the appellate courts cannot appropriately conduct their review—another safeguard for ensuring a fair trial.

### Facts

It is worth summarizing the basic facts regarding defendant's condition, most of which are set forth in Dr. Vance's report. Dr. Vance and both of defendant's expert witnesses agreed that defendant suffers from dementia, a condition that deteriorates over time. Dr. Katayoun Tabrizi, a psychiatrist, and Dr. Claudia Coleman, a psychologist, how-

ever, believe that defendant also suffers from an untreated psychotic illness, such as schizoaffective disorder, based on his symptoms and family history. Dr. Tabrizi noted that defendant could benefit from treatment with psychiatric medications, and while "[i]t is difficult to predict Mr. Coley's exact response to psychiatric treatment . . . there is a substantial chance that some of his psychiatric symptoms could be successfully treated with medications, toward restoration of his capacity to proceed to trial."

Drs. Tabrizi and Coleman had difficulty evaluating defendant because of defendant's tangential and perseverative thinking process,[1] grandiose and paranoid ideation, disorganized thinking, and irritability in response to attempts to redirect him. Dr. Vance first attempted to evaluate defendant on an outpatient basis, but found:

> Mr. Coley was quite talkative and at times hard to interrupt, especially when discussing his marriage or his alleged crime. On such occasions he would speak for several minutes without pause when answering a question that sought a one or two word answer. Efforts to re-direct Mr. Coley to provide more succinct answers tended to render him more irritable, as he noted, "I'm the one that lived the life; I got to tell it just like it happened."

Dr. Vance concluded that defendant had "very circumstantial thought processes" and "tangential thought processes." As a result of this evaluation, Dr. Vance determined that defendant would need to be evaluated on an inpatient basis.

Defendant dropped out of school in either the ninth or tenth grade; he had been enrolled in special education classes. Dr. Coleman testified at trial that defendant's school records indicated that he was considered educable mentally retarded. Defendant also had a history of substance abuse (cocaine and alcohol) and had sustained a serious head injury in 1997 that resulted in moderate to severe cognitive deficits.

In 1993, in connection with an application for Social Security disability, a psychologist administered the Wechsler Adult Intelligence Scale-Revised ("WAIS-R") to defendant, and defendant had a Full Scale IQ score of 67. In May 1997, a psychologist again administered the WAIS-R for purposes of a Social Security disability determination, and defendant obtained a full scale IQ score of 80. The Wechsler

---

1. According to Dr. Coleman, perseveration exists when a person "gets on one idea [and] you can't get him off of it."

Adult Intelligence Scale—Third Edition ("WAIS-III"), which became available in 1997, was administered in 1999 by a psychologist in connection with defendant's third application for disability, and defendant obtained a Full Scale IQ score of 58. Defendant was found by Social Security to be disabled and, upon review in 2002, Social Security concluded that his disability was continuing. In 2004, defendant was referred for vocational rehabilitation, and administration of the WAIS-III resulted in a Full Scale IQ score of 74.[2]

Dr. Vance referred defendant to LaVonne Fox, Psy.D., also at Dorothea Dix Hospital, for further psychological testing. In Dr. Fox's report, she states that her review of defendant's records indicated that administration to defendant of the Wide Range Achievement Test ("WRAT-R3") resulted in a reading grade equivalent of sixth grade. The Woodcock Johnson Tests of Achievement indicated that defendant had a 3.9 grade equivalent for reading fluency, 6.3 grade equivalent for math fluency, 4.2 grade equivalent for writing fluency, 3.3 grade equivalent for broad reading, 5.4 grade equivalent for broad mathematics, and 3.5 grade equivalent for broad written language.

Dr. Fox administered malingering tests to defendant and determined "that Mr. Coley was cooperative with testing and was not attempting to feign or exaggerate cognitive (i.e. memory) impairment." On the Repeatable Battery for the Assessment of Neuropsychological Status ("RBANS-Form A"), defendant scored in the 0.1 percentile on the immediate memory index and in the 0.2 percentile on the delayed memory index. Dr. Fox concluded as to this testing: "Overall, the results of the RBANS revealed cognitive deficits in immediate and delayed memory and visuospatial/ constructional abilities."

Dr. Fox also administered the Wisconsin Card Sorting Test, which she described as "a standardized measure of higher order executive functioning that involves abstract concept formation, problem solving, reasoning, cognitive flexibility, and the ability to benefit from feedback in situations where the rules are not made explicit." According to Dr. Fox, "Mr. Coley performed very poorly on this task," could not understand the directions, and "was unable to complete even one of the categories successfully . . . regardless of feedback that his responses were incorrect." Based on these results, Dr. Fox concluded that defendant had "deficits in the areas of cognitive flex-

---

2. None of the reports in the record identify whether the person who administered the 2004 test was a licensed psychologist.

ibility, inhibition, planning, and in his ability to alter plans on the basis of feedback, consistent with his presentation."

It is important to note that Dr. Vance, the State's expert witness, reported that (1) "the consistent opinion has been that Mr. Coley has been genuine in his presentation," (2) "it is clear that Mr. Coley has true impairment[,]" and (3) "psychological testing undertaken during this evaluation indicated that there is a very low chance that he is attempting to feign cognitive deficits[.]"

## Discussion

When a trial judge conducts a hearing, without a jury, to determine a defendant's capacity to proceed to trial, "it is the court's duty to resolve conflicts in the evidence . . . ." *State v. Heptinstall*, 309 N.C. 231, 234, 306 S.E.2d 109, 111 (1983). If the trial judge fails "to conduct a hearing with appropriate findings and conclusions," the defendant is "not afforded due process." *State v. McRae*, 139 N.C. App. 387, 391, 533 S.E.2d 557, 560 (2000), *cert. denied*, 356 N.C. 442, 573 S.E.2d 160 (2002). A trial judge is excused from making findings of fact only "where the evidence would compel the ruling made." *State v. O'Neal*, 116 N.C. App. 390, 395, 448 S.E.2d 306, 311, *disc. review denied*, 338 N.C. 522, 452 S.E.2d 821 (1994).

In this case, the trial court's order—after reciting the case's basic procedural history, identifying the individuals present at the hearing, and listing the evidence considered—stated in its entirety:

THE COURT adopts as its finding of facts the Forensic Psychiatric History And Evaluation/Legal Assessment/Discharge Summary and Aftercare plan of Dorothea Dix Hospital, for Roger Earl Coley.

THE COURT CONCLUDES from all the evidence presented; that the Defendant was cooperative with forensic interviews; that he knew he was charged with 1st Degree Murder and has a clear recollection of the events associated with his criminal acts; that he showed an understanding of the nature of the legal proceedings as well as the court room personnel; that he was able to understand matters when presented in concrete terms; that he was aware of pleas available and the significance of the pleas; that he suffers some degree of intellectual deficiency, but his I.Q. falls in the range of the upper 70s to the low 80s; that he has difficulty understanding hypothetical or abstract situations, but

when language is simplified, he has the ability to grasp concepts and understand them; that the Defendant became excessively emotional when discussing his wife, but did not display similar problems with modulation in other contexts; that he has the ability to restrain himself and control his behavior when advised that such structure was needed to be imposed on the conversation; that his mental defects may complicate his interaction with his attorney, but are not of sufficient magnitude to negate his capacity to stand trial; and that the Defendant possesses the capacity to proceed to trial.

These "findings" are not, however, sufficient to resolve the question of defendant's capacity to stand trial, as required by N.C. Gen. Stat. § 15A-1001(a) (2007).

A. *Trial Court's Improper Delegation of Fact-Finding.*

First, I believe that the trial court erred in incorporating by reference, "as its findings of fact," the report of the State's expert witness. Although the majority opinion states that it could not find any authority holding that this approach is impermissible, I think the more pertinent question is whether any authority *authorizes* a trial court to delegate its statutorily-allocated judicial fact-finding role to a witness. I cannot accept that such a delegation is consistent with our Supreme Court's mandate that courts must "jealously guard[] a defendant's right to a fair trial." *Taylor*, 298 N.C. at 410, 259 S.E.2d at 505 (internal quotation marks omitted).

In analogous contexts, our appellate courts have confirmed that a trial judge, when required to make findings of fact, may not delegate that responsibility to another person through incorporation by reference of a report submitted as evidence. In abuse, neglect, and dependency proceedings, this Court has held that because a trial court "may not delegate its fact finding duty[,]" a court "should not broadly incorporate . . . written reports from outside sources *as its findings of fact.*" *In re J.S.*, 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004) (emphasis added). This Court has explained that "although the trial court may properly incorporate various reports into its order, it may not use these as a substitute for its own independent review." *In re M.R.D.C.*, 166 N.C. App. 693, 698, 603 S.E.2d 890, 893 (2004), *disc. review denied*, 359 N.C. 321, 611 S.E.2d 413 (2005). Similarly, this Court has held in juvenile delinquency proceedings that it is the responsibility of the trial court to make findings whether home placement, counseling, and assessments are necessary for a juvenile and

that responsibility may not be delegated to a court counselor. *In re S.R.S.*, 180 N.C. App. 151, 159-60, 636 S.E.2d 277, 283-84 (2006).

I can conceive of no reason that a criminal defendant should be treated any differently than a juvenile in a delinquency proceeding or a parent in an abuse, neglect, or dependency proceeding. I would, therefore, hold that the paragraph adopting "as its finding of facts" Dr. Vance's report cannot be a basis for the order's conclusion that defendant had the capacity to proceed to trial.

I recognize, however, that following this paragraph, the trial court included conclusions that are more appropriately considered as findings of fact. The question remains whether those mislabeled findings are sufficient to support the trial court's conclusion that defendant had the capacity to stand trial.

B. *Failure to Make a Finding as to Defendant's Ability to Reasonably Assist in His Defense.*

I would hold that the findings mischaracterized as conclusions are not themselves sufficient to support the trial court's determination of capacity. Our General Assembly has set out in N.C. Gen. Stat. § 15A-1001(a) the issues that a trial judge must address in deciding a defendant's capacity to proceed to trial. That statute states:

No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner. This condition is hereinafter referred to as "incapacity to proceed."

*Id.* As our Supreme Court has explained: " '[This] statute provides three separate tests in the disjunctive. If a defendant is deficient under any of these tests he or she does not have the capacity to proceed.' " *State v. Davis*, 349 N.C. 1, 21, 506 S.E.2d 455, 466 (1998) (quoting *State v. Shytle*, 323 N.C. 684, 688, 374 S.E.2d 573, 575 (1989)), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219, 119 S. Ct. 2053 (1999).

The most critical flaw in the trial court's competency order is its failure to make any finding that defendant was able "to assist in his defense in a rational or reasonable manner," as required by N.C. Gen. Stat. § 15A-1001(a). At most, the order finds that defendant's "mental defects *may complicate his interaction with his attorney,* but are

not of sufficient magnitude to negate his capacity to stand trial[.]" (Emphasis added.)

A defendant's ability to interact with an attorney is certainly one aspect of being able to "assist in his defense," but it does not necessarily fully resolve whether defendant meets the third test of N.C. Gen. Stat. § 15A-1001(a). In *State v. Jackson*, 302 N.C. 101, 104, 273 S.E.2d 666, 669 (1981) (emphasis added), our Supreme Court specifically distinguished between a defendant's ability to work with counsel and a defendant's ability to assist in his defense: "The test for capacity to stand trial is whether a defendant has capacity to comprehend his position, to understand the nature of the proceedings against him, *to conduct his defense in a rational manner and to cooperate with his counsel so that any available defense may be interposed.*" The United States Supreme Court's decision in *Drope* likewise distinguished between the two areas of activity: "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, *to consult with counsel, and to assist in preparing his defense* may not be subjected to a trial." *Drope*, 420 U.S. at 171, 43 L. Ed. 2d at 112-13, 95 S. Ct. at 903 (emphasis added).

As the United States Supreme Court has further emphasized, the Sixth Amendment " 'grants to the accused *personally* the right to make his defense. It is the accused, *not counsel*, who must be informed of the nature and cause of the accusation, who must be confronted with the witnesses against him, and who must be accorded compulsory process for obtaining witnesses in his favor.' " *Rock v. Arkansas*, 483 U.S. 44, 52, 97 L. Ed. 2d 37, 46-47, 107 S. Ct. 2704, 2709 (1987) (second emphasis added) (quoting *Faretta v. California*, 422 U.S. 806, 819, 45 L. Ed. 2d 562, 572, 95 S. Ct. 2525, 2553 (1975)). Indeed, the Court explained in *Faretta* that "[t]he right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." 422 U.S. at 819-20, 45 L. Ed. 2d at 572-73, 95 S. Ct. at 2533. Thus, as a unanimous United States Supreme Court stressed:

> "Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so."

STATE v. COLEY

[193 N.C. App. 458 (2008)]

*Cooper v. Oklahoma*, 517 U.S. 348, 354, 134 L. Ed. 2d 498, 506, 116 S. Ct. 1373, 1376-77 (1996) (quoting *Riggins v. Nevada*, 504 U.S. 127, 139-40, 118 L. Ed. 2d 479, 492, 112 S. Ct. 1810, 1817-18 (1992) (Kennedy, J., concurring in judgment)).

In sum, to have the capacity to stand trial, a defendant must not only be able to interact with his attorneys, but must also be able to meaningfully exercise the rights inherent in a fair trial. Consequently, "in assessing a defendant's competency, the Court must determine the impact, if any, that his mental or physical condition will have on his ability to participate in his own defense, including the exercise of his fundamental rights such as the right to testify in his own behalf, the right to confront adverse witnesses and the right to be present." *United States v. Gambino*, 828 F. Supp. 191, 200 (S.D.N.Y. 1993).

In this case, at most, the trial court found that defendant could reasonably interact with counsel. It made no finding regarding defendant's ability to assist in his own defense, including the exercise of his fundamental trial rights such as the right to testify in his own behalf. Without such a finding, the order fails to address each of the tests set out in N.C. Gen. Stat. § 15A-1001(a)—to say nothing of the constitutional standard—and, therefore, is inadequate to support a determination that defendant had the capacity to proceed to trial.

The trial court's error is not surprising given the evidence submitted by the State. Dr. Vance's report identified "[t]he central question" as being "the extent which Mr. Coley's dementia hindered his ability to work with his attorney in a rational and reasonable manner." He then proceeded to answer that question by concluding that defendant was not unable "to work rationally and reasonably with his attorney." *Compare State v. McClain*, 169 N.C. App. 657, 663, 610 S.E.2d 783, 788 (2005) (finding trial court's determination of competency supported by testimony of expert that defendant was able both to cooperate with his attorneys and assist in his own defense, although attorneys might need to assign him specific tasks and he would need additional time to complete tasks). Thus, even if we could consider appropriate the trial court's adoption of Dr. Vance's report as its findings of fact, that report also does not address the dispositive question.

I would, therefore, remand for further findings of fact as to whether defendant had the ability to assist in his defense in a rational or reasonable manner, including the exercise of his fundamental trial rights such as the right to testify. While the majority opinion states

that "the record contains evidence that defendant possessed the capacity to . . . conduct his defense in a rational manner[,]" the order itself contains no such finding. When, as here, the evidence is conflicting, it is well established that an order cannot be affirmed based on findings that could have been made, but were not. *See Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980) ("It is not enough that there may be evidence in the record sufficient to support findings which *could have been made*. The trial court must itself determine what pertinent facts are actually established by the evidence before it . . . .").

C. *Failure to Resolve All Conflicts in the Evidence.*

As our Supreme Court emphasized in *Heptinstall*, 309 N.C. at 234, 306 S.E.2d at 111, when a trial judge is determining a defendant's capacity to proceed to trial, the judge must resolve the conflicts in the evidence. In this case, Dr. Vance made a number of recommendations "in order to try to offset some of [defendant's] impairments." The trial court, however, never made any finding as to whether adoption of some or all of those recommendations was necessary in order to ensure defendant's capacity to stand trial.

Significantly, Dr. Vance described this case as a "close" one and repeatedly acknowledged that defendant's ability simply to work with his attorneys "was impaired." While Dr. Vance, at the time of the competency hearing, believed that defendant had an ability to control his behavior when the circumstances warranted it, he also recommended that counsel "adopt[] a more directive questioning style when conferring with Mr. Coley" and "allow him a 'cooling off period' before asking him to revisit [a topic making him upset or emotional] in a more structured manner."

Dr. Vance confirmed that based on the results of Dr. Fox's testing, a person with defendant's scores "would certainly be expected to have problems" processing information and making decisions based on that information. He warned, therefore, that "if [defendant is] asked to make a judgment on the spur of the moment, he might be more likely to have difficulty."

Dr. Vance further testified that when defendant was agitated, "he would be impaired in his ability to process material in a methodical, logical manner." As Dr. Vance stated in his report, and the trial judge found, "when Mr. Coley discusses his wife or the alleged crime, he has a tendency to become excessively and inappropriately emotional, to the point of bordering on agitation." Although Dr. Vance and the trial

judge noted that defendant did not have the same problem "in other contexts," defendant's trial focused entirely on defendant's wife and his crime, which was the killing of his wife. Dr. Vance acknowledged that "[i]t is within the realm of possibility" that defendant could become agitated during the trial.

Dr. Vance noted that if defendant became agitated, it would be advisable to "give him a cooling off period[.]" He also confirmed that if, at Dix Hospital, they "attempted to interrupt him before he had a chance to say what he wanted to say, it would at times make him more irritable or more sullen." He explained that Dix Hospital had "a fair amount of success" when defendant was told at the beginning of an interview that more structure was needed in the conversation, but Dr. Vance clarified that they also told defendant: "I'll give you an opportunity later on to tell me the full details. And we would always afford him that opportunity later on."

Dr. Vance explained that his recommendations were expressly "tailored to the specifics of the neuropsychological impairments we saw with him." When, however, Dr. Vance was asked about the need for accommodations, the following exchange then occurred:

Q. Now, you understand that in a trial we can't foresee everything that's going to happen. And if the trial starts at eight in the morning and goes to five in the afternoon, we'll have a series of decisions we're going to have to make on what questions to ask, whether a witness is telling the truth or not, whether to call a witness.

Is it your opinion that the court should make an accommodation to that, if we would have to make decisions to stop? And based on his deficit to give Mr. Coley an opportunity to think about this and think about—

A. I do not profess to be an expert in how the court functions. These are simply my recommendations on how one might best interact with Mr. Coley. And I will leave it [to] the court's discretion how best to accommodate these recommendations if they need to be accommodated.

When specifically asked whether defendant's dementia and cognitive deficits were such that defendant would more likely be unable to assist at trial if the recommendations were not accommodated, Dr. Vance stated: "I cannot say whether the lack of any such provisions would so impair him as to cause him to fall below the threshold of

being competent. As I said, it's my opinion Mr. Coley is competent. *But it's also my opinion that he does not exceed that threshold by a significant margin.*" (Emphasis added.)

In short, according to Dr. Vance—whose report was the sole basis for the trial court's order—defendant was just over the line for competency, with little margin for error, and Dr. Vance, because of a lack of knowledge regarding court processes, *could not* testify that, in the absence of the accommodations he recommended and Dix Hospital employed, defendant would still be competent. Although Dr. Vance left the issue of his recommendations to "the court's discretion," the trial court never addressed the need for those recommendations.

The question whether Dr. Vance's recommendations were necessary in order for defendant to have the capacity to proceed to trial was an issue integral to a determination whether defendant could reasonably assist in his defense. The recommendations—and the underlying neuropsychological impairments and dementia giving rise to those recommendations—directly relate to defendant's ability to exercise his fundamental trial rights, including the decisionmaking processes inherent in any trial.

Perhaps most distinctly, these recommendations relate to defendant's ability to exercise his constitutional right to testify. It has been established for more than 20 years that a defendant has a constitutional right to testify: "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.' " *Rock*, 483 U.S. at 51, 97 L. Ed. 2d at 46, 107 S. Ct. at 2708-09 (quoting *Faretta*, 422 U.S. at 819 n.15, 45 L. Ed. 2d at 574 n.15, 95 S. Ct. at 2533 n.15). *See also State v. Colson*, 186 N.C. App. 281, 283, 650 S.E.2d 656, 658 ("[T]he United States Supreme Court has consistently held that a defendant's absolute right to testify is an inherent part of both the due process requirements of the Fifth and Fourteenth Amendments and the compulsory process clause of the Sixth Amendment."), *appeal dismissed and disc. review denied*, 362 N.C. 89, 656 S.E.2d 280 (2007).

In *Rock*, the Supreme Court unambiguously stated: "Even more fundamental to a personal defense than the right of self-representation . . . is an accused's right to present his own version of events in his own words. A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness." 483 U.S. at 52, 45 L. Ed. 2d at 47, 107

S. Ct. at 2709. Indeed, in *Riggins*, 504 U.S. at 137-38, 118 L. Ed. 2d at 490-91, 112 S. Ct. at 1816, the United States Supreme Court acknowledged that a lack of capacity to testify effectively—in that case resulting from forced medication administration—implicates a defendant's constitutional right to a fair trial.

The actual trial of this case demonstrates the need to specifically address, in the competency order, which, if any, of Dr. Vance's recommendations should be adopted. During defendant's testimony, the State repeatedly objected to "the defendant being allowed to just ramble on and on" rather than answering defense counsel's questions. Other times, the State objected to defendant's answers as being incoherent: "Your Honor, I'm going to object. I don't know what we're talking about." On each occasion, the trial judge sustained the objection. When defense counsel tried to focus defendant's attention, the State successfully objected to counsel's asking leading questions.

Ultimately, after the trial judge sustained a series of objections to defendant's answers on the grounds of relevancy and counsel's questions as leading, defense counsel asked to be heard, and the jury was excused. Defense counsel explained what he was trying to elicit, and the trial judge responded:

> You can ask him that. You can ask him, what were you thinking? But you can't lead him into it.
>
> . . . .
>
> And if he's just going to ramble all morning, he's not going to answer the questions that's, that's, that's his decision. But you can't lead him. And he has to answer your questions.
>
> . . . .
>
> . . . . *And if he chooses not to answer them and just ramble on and on and on, that's his decision.*

(Emphasis added.) As defendant's examination continued, the State continued to successfully object to leading questions and to defendant's answers as rambling. As all of the expert witnesses agreed, however, defendant's rambling was a function of his dementia, especially when he was agitated—a situation that occurred when he had to talk about his wife and his crime, precisely the subject of his testimony.

Defendant's performance during the trial strongly suggests that without accommodations, defendant was unable to assist in his de-

fense—including exercising his constitutional right to testify—in a rational and reasonable manner as required by N.C. Gen. Stat. § 15A-1001(a). *See Riggins*, 504 U.S. at 142, 118 L. Ed. 2d at 494, 112 S. Ct. at 1819 (Kennedy, J., concurring in judgment) ("At all stages of the proceedings, the defendant's behavior, manner, facial expressions, and emotional responses, or their absence, combine to make an overall impression on the trier of fact, an impression that can have a powerful influence on the outcome of the trial. If the defendant takes the stand, . . . his demeanor can have a great bearing on his credibility and persuasiveness, and on the degree to which he evokes sympathy.").

This Court's decision in *McClain*, 169 N.C. App. at 664, 610 S.E.2d at 788, provides a distinctive contrast to this case. Although the trial judge, once he found the defendant competent to stand trial, declined to postpone the trial in order to implement recommendations made by the defendant's expert witness to improve the defendant's competence, the trial judge "did modify the manner in which the trial was conducted to allow defendant more frequent breaks and longer breaks following the testimony of each witness so that defendant's attorneys could consult with defendant regarding witness testimony, explain anything he did not understand, and to solicit questions or relevant information from him." *Id.* The trial judge adopted these accommodations, even though the State's expert witness in *McClain* had testified "that defendant's competency as it related to his ability to stand trial was not dependent upon implementation of [the defendant's expert's] recommendations." *Id.*

In this case, by contrast, the State failed to present evidence that defendant's capacity *was not* dependent upon Dr. Vance's recommendations. Because Dr. Vance's testimony and report and the evidence from defendant's expert witnesses raise an issue whether adoption of some or all of those recommendations was necessary for defendant to be competent, I believe the trial court was required to address those recommendations in its competency order and should do so on remand.

D. *Findings of Fact not Supported by Competent Evidence.*

I also believe that some of the trial court's "conclusions" are not supported by competent evidence. First, the order adopts from Dr. Vance's report a statement that "Mr. Coley was cooperative with forensic interviews." While the order seems to make that finding as to all forensic interviews, suggesting that it supports a determination that defendant would be able to assist in his defense, Dr. Vance's

report. makes that assertion only in describing defendant's efforts during particular interviews following inpatient admission to Dix Hospital. The order disregards the report's description of significant difficulties that occurred during other forensic examinations, including examinations by Dr. Vance, Dr. Fox, Dr. Tabrizi, and Dr. Coleman.

The trial court also found that defendant "showed an understanding of the nature of the legal proceedings as well as the court room personnel" and "was aware of pleas available and the significance of the pleas[.]" In fact, Dr. Vance's report and testimony reveal that initially defendant had some confusion as to plea bargains and the roles of courtroom personnel. His testimony—although not his report—explains that defendant was educated at Dix Hospital as to these matters and that defendant was, with some prompting, able to accurately repeat what he had been told. On the other hand, Dr. Fox's testing—relied upon by Dr. Vance—established that defendant had very substantial memory deficits. He functioned in the bottom 0.1% or 0.2% of the population—in other words, substantially worse than the bottom one percent of the population.

As Dr. Coleman explained: "You have to look at less than one in a thousand individuals to find someone whose memory, verbal memory of hearing what we're talking about today is less than Mr. Coley's for new information. Now, he can remember old information for good. And if you practice ten or twenty times with him he remembers it pretty well. But he doesn't remember it well after four trials. He doesn't remember it well after ten or fifteen minutes." Although this memory deficit was undisputed, neither the trial court nor Dr. Vance resolved this discrepancy between that deficit and reliance upon the Dix Hospital education process as establishing defendant's understanding of legal proceedings. The trial court's order thus leaves open a key question: How long did defendant remember what Dix Hospital taught him? One must wonder whether defendant's new-found knowledge remained with him months later at the date of trial. *See State v. Reid*, 38 N.C. App. 547, 549-50, 248 S.E.2d 390, 392 (1978) ("The fact that two to three months prior [to the competency hearing] the defendant was determined to be mentally capable to proceed to trial cannot be determinative in itself when the examining psychiatrist casts doubt on his own testimony" by stating on cross-examination that he could not express an opinion regarding the defendant's competency on the date of the hearing.), *disc. review denied*, 296 N.C. 588, 254 S.E.2d 31 (1979).

The trial court also found that defendant "suffers some degree of intellectual deficiency, but his I.Q. falls in the range of the upper 70s to the low 80s[.]" This finding was based on Dr. Vance's somewhat casual assertion that:

> It is generally acknowledged, however, that intelligence tests can be sensitive to poor effort or performance and in that regard they may be more likely to underestimate intellectual ability than to overestimate it. For this reason, if a range of scores is present, the higher scores are generally viewed as more indicative of true intellectual ability. As such, the available data suggest that Mr. Coley's true IQ falls somewhere in the range of the upper 70s to the low 80s, which is consistent with a diagnosis of Borderline Intellectual Functioning.

Notably, the Dorothea Dix psychologist, Dr. Fox, did not apply this purported principle. Nor did the Social Security Administration do so when determining defendant to be disabled.

While the trial court was entitled to determine what weight to give each piece of evidence, Dr. Vance's assertion regarding defendant's "true IQ" does not rise above speculation.[3] A number of factors can cause variations in IQ results apart from poor effort, including improper administration of the test (such as allowing too much time) and aging of the test so that its standardization is no longer accurate. Since Dr. Vance has given no indication that he—or Dr. Fox—made any attempt to exclude causes for the *single* higher IQ score of 80 other than poor effort, the conclusion that defendant has a "true IQ" in the upper 70s or low 80s is merely speculative. *See Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230-31, 538 S.E.2d 912, 915 (2000) (finding expert witness' testimony constituted speculation and did not qualify as competent evidence when several other potential causes existed for plaintiff's condition, but expert did not pursue any testing to determine if they were, in fact, the cause of plaintiff's symptoms).

In addition, while the order addresses defendant's IQ, it does not include findings regarding his memory deficits, his ability to process new information, or his ability to alter his plans based on

---

3. There is also some question whether Dr. Vance, who was proffered as an expert in psychiatry rather than psychology, was competent to testify on how to interpret IQ testing. During his testimony, Dr. Vance repeatedly deferred to Dr. Coleman, a psychologist, on matters of testing. Indeed, he relied upon Dr. Fox to conduct all psychological testing in connection with his evaluation of defendant.

feedback—all areas related to defendant's ability to assist in his defense and all arising out of the State's expert's evaluation. Dr. Coleman testified, based on Dr. Fox's testing, that defendant had more significant deficits in processing new information than mildly retarded individuals. The State presented no contrary evidence. The United States Supreme Court has specifically criticized courts, including appellate courts, for "mention[ing] aspects of the report [of a psychiatric evaluation] suggesting competence," but not "mention[ing] the contrary data." *Drope*, 420 U.S. at 175, 43 L. Ed. 2d at 115, 95 S. Ct. at 905-06.

## Conclusion

I would, therefore, hold that the trial court improperly delegated its fact-finding role by adopting Dr. Vance's report as its findings of fact. I would further hold that the remaining findings of fact are insufficient to resolve the question of defendant's capacity to stand trial. I would, accordingly, remand for further findings of fact. On remand, I would leave to the discretion of the trial court whether to hear additional evidence regarding defendant's capacity to stand trial. I, therefore, respectfully dissent from the majority opinion.