CALABRIA, Judge.
 

 *491
 
 Kelvin Oyakhilome Irabor ("defendant") appeals from a judgment entered upon a jury's verdict finding him guilty of second-degree murder, assault with a deadly weapon, and discharging a firearm into an occupied dwelling. After careful review, we conclude that the trial court committed prejudicial error by failing to include the relevant no duty to retreat and stand-your-ground provisions from its jury instructions on self-defense. Therefore, we reverse the trial court's judgment and remand for a new trial.
 

 I. Factual and Procedural Background
 

 In October 2015, defendant lived in apartment 14E in the Oak Knoll apartment complex in Asheville, along with his child, London, London's mother, Denise Williams ("Williams"), and Williams's sister, Shamica Robinson ("Robinson"). Sometimes Dondre Nelson ("Nelson"), who was a friend of one of Robinson's other sisters, stayed with them in apartment 14E.
 

 Defendant testified that he had known Nelson for some time and had befriended Nelson to avoid becoming a "target." According to defendant, Nelson was a high-ranking member of the Blood gang, which was highly active in the Oak Knoll area, and had frequently robbed individuals around the Oak Knoll apartments. Nelson had gained this status by killing a rival gang member in Atlanta, Georgia. Defendant also testified that he knew Nelson always carried a gun on his person, and Nelson had informed defendant that he had shot an individual for allegedly discharging a weapon into the Oak Knoll apartments. Since defendant knew Nelson's reputation, he had hoped his friendship with Nelson would ensure that he did not become a target of gang activity.
 

 On 9 October 2015, defendant rode with Nelson to an ABC store, where they met Jenna Ray ("Ray"), with whom Nelson apparently
 
 *492
 
 had a relationship. After defendant and Nelson returned to Oak Knoll, Ray also arrived. Williams was angry when she saw Ray and was prepared to attack her. When defendant stopped her from attacking Ray, Williams became angry with defendant. Williams's niece, Gelisa Madden ("Madden"), attempted to intervene, striking defendant, who struck her back.
 

 While defending himself from Madden, defendant released Williams, who went into apartment 14E and returned with a broomstick, with which she struck defendant. Defendant responded by drawing a firearm and chasing Williams. While chasing her, he fired three shots. Williams fled into apartment 14E, and a neighbor called Nelson. One of defendant's shots allegedly struck the door of apartment 14E, where Nelson's daughter was staying at the time.
 

 *423
 
 After chasing Williams, defendant left Oak Knoll for several hours. He called multiple people asking for a ride and eventually reached Nelson. Nelson was furious and refused to give him a ride. Defendant decided to walk back to Oak Knoll instead. When defendant returned to Oak Knoll, he saw Nelson and two others standing outside apartment 14E. Fearing what Nelson might do to him, defendant went to another apartment first, where he talked with Jerome Smith ("Smith"). Smith told defendant that Nelson was upset with defendant for firing a shot into apartment 14E, where Nelson's daughter was staying, and warned defendant to be careful. Defendant borrowed Smith's gun for protection.
 

 After defendant left Smith's apartment, he walked along the sidewalk, heading back to apartment 14E. As defendant approached the apartment, Nelson called out to defendant and accused him of shooting at Nelson's daughter, which defendant denied. Nelson responded by telling defendant "this is war, empty your pocket," while advancing towards defendant. Fearing Nelson would attack and rob him, defendant pulled the gun out of his pocket, "racked it," and told Nelson to back up. Nelson continued to advance, and defendant fired two warning shots into the ground; however, Nelson remained undeterred. Nelson then lunged at defendant, and defendant fatally shot Nelson. Defendant then fled, dropping Smith's gun into the bushes.
 

 Defendant was indicted for the first-degree murder of Nelson, assault on a female of Madden, assault with a deadly weapon with intent to kill of Williams, and discharging a firearm into an occupied dwelling. Trial commenced during the 23 January 2017 session of Buncombe County Superior Court. Following the State's presentation of evidence, defendant presented evidence, including his own testimony.
 

 *493
 
 At the charge conference, the trial court agreed to deliver N.C.P.I.-Crim. 206.10, the pattern jury instruction on first-degree murder and lesser-included offenses. This instruction includes instructions on self-defense and a "no duty to retreat" provision as part of the explanation of self-defense.
 
 See
 
 N.C.P.I.-Crim. 206.10 (June 2014) (providing that a "defendant has no duty to retreat in a place where the defendant has a lawful right to be"). N.C.P.I.-Crim. 206.10 also incorporates by reference a "stand-your-ground" provision found in N.C.P.I.-Crim. 308.10.
 
 See id.
 
 308.10 (June 2017) (providing that "[i]f the defendant was not the aggressor and the defendant was ... [at a place the defendant had a lawful right to be], the defendant could stand the defendant's ground and repel force with force") (second set of brackets in original).
 

 Although the trial court agreed to instruct the jury on self-defense according to N.C.P.I.-Crim. 206.10, it ultimately omitted the "no duty to retreat" language from its actual instructions without prior notice to the parties and failed to give any part of the "stand-your-ground" instruction. Defense counsel failed to object to the instructions as given.
 

 The jury returned verdicts finding defendant guilty of second-degree murder, assault with a deadly weapon, and discharging a firearm into an occupied dwelling, and not guilty of assault on a female. The trial court sentenced defendant to a minimum of 200 and a maximum of 252 months for second-degree murder, and a minimum of 55 and a maximum of 78 months for discharging a firearm and assault, to be served consecutively in the custody of the North Carolina Division of Adult Correction.
 

 Defendant appeals.
 

 II. Self-Defense Instruction
 

 Defendant contends the trial court erroneously omitted the relevant no duty to retreat and stand-your-ground provisions from the jury instructions on self-defense, which constituted reversible error. We agree.
 

 A. Standard of Review
 

 "It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence."
 
 State v. Shaw
 
 ,
 
 322 N.C. 797
 
 , 803,
 
 370 S.E.2d 546
 
 , 549 (1988) (citation omitted). "A defendant is entitled to a jury instruction on self-defense when there is evidence from which the jury could infer that he acted in self-defense."
 
 State v. Allred
 
 ,
 
 129 N.C. App. 232
 
 , 235,
 
 498 S.E.2d 204
 
 , 206 (1998) (citation omitted). "In determining
 
 *424
 
 whether an instruction on ... self-defense must be given, the evidence is to be viewed in the light most favorable to the defendant."
 
 *494
 

 State v. Moore
 
 ,
 
 363 N.C. 793
 
 , 796,
 
 688 S.E.2d 447
 
 , 449 (2010) (citation omitted). Whether the trial court erred in instructing the jury is a question of law, reviewed
 
 de novo
 
 .
 
 State v. Osorio
 
 ,
 
 196 N.C. App. 458
 
 , 466,
 
 675 S.E.2d 144
 
 , 149 (2009).
 

 B. Analysis
 

 Self-defense is an affirmative defense, whereby "the defendant says, 'I did the act charged in the indictment, but I should not be found guilty of the crime charged because * * *.' "
 
 State v. Caddell
 
 ,
 
 287 N.C. 266
 
 , 289,
 
 215 S.E.2d 348
 
 , 363 (1975). Our amended "statutes provide two circumstances in which individuals are justified in using deadly force, thus excusing them from criminal culpability."
 
 State v. Lee
 
 ,
 
 370 N.C. 671
 
 , 674,
 
 811 S.E.2d 563
 
 , 566 (2018).
 
 N.C. Gen. Stat. § 14-51.3
 
 (a) states, in relevant part:
 

 A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However,
 
 a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be
 
 if ... the following applies:
 

 (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
 

 N.C. Gen. Stat. § 14-51.3
 
 (a) (2017) (emphasis added).
 

 On appeal, the State contends that defendant was not entitled to an instruction on self-defense for several reasons. First, the State asserts defendant failed to present sufficient evidence to support defendant's actual and reasonable belief that shooting Nelson was necessary to protect himself from imminent death or great bodily harm. Second, the State argues since defendant was the initial aggressor, he lost the protections of the self-defense statute. Therefore, according to the State, the trial court was not required to instruct the jury on self-defense and any error in the self-defense instruction was harmless. We disagree.
 

 Viewed in the light most favorable to defendant, the evidence supports a jury instruction on self-defense, and the trial court agreed to give it. Defendant was fully aware of Nelson's violent and dangerous propensities on the night of the shooting. According to defendant's testimony, Nelson had achieved his high-ranking membership in the Blood gang by killing a rival gang member. In addition, Nelson stated that he shot an individual who he believed had shot into the Oak Knoll apartments.
 

 *495
 
 Furthermore, defendant observed Nelson robbing individuals in the apartments on multiple occasions and testified that, to his knowledge, Nelson always carried a gun with him.
 

 Defendant's knowledge of Nelson's violent propensities, being armed, and prior acts supports the trial court's finding that defendant reasonably believed it was necessary to use deadly force to save himself from death or great bodily harm.
 
 See
 

 State v. Strickland
 
 ,
 
 346 N.C. 443
 
 , 459,
 
 488 S.E.2d 194
 
 (1997) ("[E]vidence of prior violent acts by the victim or of the victim's reputation for violence may ... prove that a defendant had a reasonable apprehension of fear of the victim." (citation omitted) );
 
 see also
 

 N.C. Gen. Stat. § 14-51.3
 
 (a).
 

 Prior to the shooting, defendant offered evidence that Nelson stood outside Apartment 14E, where defendant lived, with two other individuals and was waiting to confront defendant about allegedly shooting a gun towards Nelson's daughter. Defendant also testified he borrowed a gun from Smith for protection. When Nelson noticed defendant walking towards his apartment, Nelson told defendant "this is war, empty your pocket"; continued to advance upon defendant after defendant fired two warning shots; and eventually lunged at defendant while reaching behind his back towards his waistband.
 

 By viewing the evidence in the light most favorable to defendant, a jury could conclude that defendant actually and reasonably believed that Nelson was about to shoot him and that it was necessary for defendant to use deadly force to protect himself. The fact
 
 *425
 
 that defendant armed himself and did not affirmatively avoid the altercation does not make defendant the initial aggressor.
 
 See
 

 State v. Vaughn
 
 ,
 
 227 N.C. App. 198
 
 , 204,
 
 742 S.E.2d 276
 
 , 279-80 (2013). Further, defendant's earlier conduct towards Williams does not make him an aggressor against Nelson.
 

 When law enforcement officers searched Nelson's body, they did not find a gun. However, evidence presented at trial, when viewed in the light most favorable to defendant, suggested that Nelson may have been armed. Law enforcement officers testified that neither Nelson's wallet or cell phone were found on his person. Yet, Nelson had used his cell phone earlier that evening, and a receipt from Walmart was found in Nelson's pocket. Witnesses also reported seeing an unidentified female fleeing the area that night with a gun.
 

 From this evidence, a jury could reasonably infer that defendant reasonably believed Nelson was armed at the time of the altercation. Therefore, defendant was still entitled to protect himself if he reasonably believed Nelson was armed and intended to inflict death or serious
 
 *496
 
 bodily injury on defendant.
 
 See
 

 State v. Spaulding
 
 ,
 
 298 N.C. 149
 
 , 157,
 
 257 S.E.2d 391
 
 , 396 (1979) (noting that "an action by the victim as if to reach for a weapon was sufficient to justify an instruction on self-defense" (citation omitted) ).
 

 The State further contends that defendant's testimony was inconsistent and, thus, insufficient. However, "if the defendant's evidence, taken as true, is sufficient to support an instruction for self-defense, it must be given
 
 even though the State's evidence is contradictory
 
 ."
 
 Moore
 
 ,
 
 363 N.C. at 796
 
 ,
 
 688 S.E.2d at 449
 
 (emphasis added) (citation omitted);
 
 see also
 

 State v. Dooley
 
 ,
 
 285 N.C. 158
 
 , 163,
 
 203 S.E.2d 815
 
 , 818 (1974) ("Where there is evidence that defendant acted in self-defense, the court must charge on this aspect even though there is contradictory evidence by the State or [there are] discrepancies in defendant's evidence." (citations omitted) ). Because the evidence, when viewed in the light most favorable to defendant, supports an instruction on self-defense, the trial court correctly gave the self-defense instruction under N.C.P.I.-Crim. 206.10.
 
 See
 

 Allred
 
 ,
 
 129 N.C. App. at 235
 
 ,
 
 498 S.E.2d at 206
 
 .
 

 However, the trial court erred by failing to include the relevant no duty to retreat and stand-your-ground provisions after agreeing to provide the instructions. We initially note that this issue is preserved for appellate review.
 
 See
 

 Lee
 
 ,
 
 370 N.C. at 676
 
 ,
 
 811 S.E.2d at 567
 
 ("When a trial court agrees to give a requested pattern instruction, an erroneous deviation from that instruction is preserved for appellate review without further request or objection."). Here, the trial court agreed to give the pattern jury instruction under N.C.P.I.-Crim. 206.10, which includes the relevant no duty to retreat and stand-your-ground provisions; however, the trial court failed to include these provisions in its charge to the jury. Therefore, pursuant to
 
 Lee
 
 , this issue is preserved.
 
 See
 
 id.
 

 Our Supreme Court recently affirmed that "a defendant entitled to
 
 any
 
 self-defense instruction is entitled to a
 
 complete
 
 self-defense instruction, which includes the relevant stand-your-ground provision."
 
 State v. Bass
 
 , --- N.C. ----, ----,
 
 819 S.E.2d 322
 
 , 326 (2018) (No. 208A17) (emphasis in original). Failure to include the relevant stand-your-ground provision constitutes prejudicial error and warrants a new trial.
 
 Lee
 
 ,
 
 370 N.C. at 671-72
 
 ,
 
 811 S.E.2d at 564
 
 (holding the omission of the stand-your-ground provision amounted to an "inaccurate and misleading statement of the law[,]" requiring a new trial). Defendant is entitled to a new trial with proper jury instructions.
 

 *497
 

 III. Conclusion
 

 The trial court committed prejudicial error by failing to include the relevant no duty to retreat and stand-your-ground provisions in the agreed-upon jury instructions on self-defense. Therefore, we reverse the judgment of the trial court and remand for a new trial.
 
 See
 
 id.
 

 Because we have reversed and remanded for a new trial, we need not address defendant's remaining arguments on appeal.
 

 NEW TRIAL.
 

 Judges TYSON and ZACHARY concur.