MORGAN, Justice.
*482 **304 Defendant Alphonzo[1] Harvey was charged upon a proper indictment and convicted by a jury of second-degree murder, a criminal offense in violation of N.C.G.S. § 14-17. Defendant contended on appeal that the trial court committed error by failing to instruct the jury on the **305 affirmative defense of self-defense pursuant to his request. The Court of Appeals disagreed and upheld defendant's conviction, finding that in light of the evidence, defendant was not entitled to a jury instruction on any theory of self-defense. We affirm the determination of the Court of Appeals.
Factual and Procedural Background
On 11 April 2016, defendant was indicted by a grand jury for the criminal offense of first-degree murder in connection with the stabbing death of Tobias Toler. Defendant pleaded not guilty and the State elected to refrain from proceeding capitally. A jury trial was held beginning on 22 May 2017 before the Honorable Milton F. Fitch, Jr. in Superior Court, Edgecombe County, during which the State presented evidence from ten witnesses and defendant testified on his own behalf.
The evidence presented at trial tended to show the following: On 11 August 2015, Toler and four of defendant's friends attended a party at defendant's mobile home. At the party, the attendees were drinking alcohol, listening to music, and dancing. At some point, Toler was dancing with a woman with whom defendant had previously engaged in a romantic or sexual relationship. Toler had been drinking a beer with a high alcohol content from a plastic bottle, and he began staggering "all over [the] house" and acting in a rowdy manner by "getting real loud and ... cussing and fussing." Defendant, who had consumed at least one beer by this time, realized Toler was intoxicated and testified that he "asked him to leave about seven, eight times." Toler, however, refused to depart until defendant left the dwelling as well. Defendant testified that, as he exited the trailer, Toler followed and stated that "he ought to whip [defendant's] damn ass." Toler threw the plastic beer bottle from which he had been drinking in defendant's direction, but the bottle did not make contact with defendant.
Defendant started to go back inside his mobile home but, upon realizing that Toler had not yet left the premises, turned back to confront Toler, asking, "[D]idn't I tell you [to] leave my damn house[?]" Defendant testified that, in response, Toler found "a piece of broke [sic] off little brick" and threw it at defendant, cutting defendant's finger. Toler then reached into his pocket and produced a small, black pocketknife, telling defendant that "he ought to kill [defendant's] damn ass with it."[2]
**306 Defendant once again ordered Toler to leave his property, at which point defendant testified that after Toler hit him, he "hit [Toler] in the face."
Defendant then went back inside his mobile home and grabbed a knife from the top of a cabinet.[3] Defendant testified that his purpose for returning to the trailer to obtain the knife was "[b]ecause I was scared [Toler] was going to try and hurt me," and that it was defendant's belief that once he got the knife, Toler would "leave, go ahead on and leave." When defendant returned outside, he approached Toler while displaying the knife and swinging it in Toler's direction. When questioned at trial regarding his use of the knife, defendant testified that he "tried to make [Toler] leave." During the confrontation, Toler attempted to move defendant's motorized scooter which was resting against the side of the mobile home. In the process, the scooter fell to the ground, breaking its headlights.[4] Toler also slipped to the ground, *483 but immediately returned to his feet. Defendant then approached Toler and "ma[d]e a stabbing motion about three times," piercing Toler once in the chest and puncturing his heart.
Following the stabbing, Toler attempted to run away but collapsed in a nearby resident's yard. When asked on direct examination about Toler's departure from defendant's mobile home property, defendant stated that "[a]fter the accident happened to him, he left, he ran out of the yard then." Defendant further testified that he believed that Toler "just got scared and ran," and he thought that Toler had collapsed because he was drunk. Defendant did not approach Toler after he left defendant's property; instead, defendant walked back inside the mobile home, pulled out a tissue, and cleaned Toler's blood from the blade of the knife. Defendant then placed the knife back on top of the cabinet from where defendant had initially obtained it, walked outside, and proceeded to burn the bloody tissue that he had used to clean the knife.
Defendant had given notice of his intent to assert defenses that included self-defense, and during the charge conference he requested a self-defense instruction along with an instruction on voluntary manslaughter. The trial court declined to deliver both of these requested instructions and instructed the jury to consider only whether defendant **307 was guilty of first-degree murder, the lesser-included offense of second-degree murder, or not guilty. Accordingly, no form of a self-defense instruction was given to the jury by the trial court. On 24 May 2017, the jury convicted defendant of second-degree murder for the stabbing of Toler. The trial court thereupon sentenced defendant to a term of 483 to 592 months of imprisonment.
Upon defendant's appeal, the Court of Appeals concluded that defendant was not entitled to a self-defense instruction because the evidence at trial did not establish that defendant believed that it was necessary to kill Toler in order to protect himself from death or great bodily harm. As a result, the Court of Appeals majority found no error in defendant's trial. The dissenting judge on the Court of Appeals panel expressed the opinion that the trial court should have delivered a self-defense instruction and that its failure to do so prejudiced defendant. We agree with the lower appellate court, as this Court finds the Court of Appeals' application of the pertinent law to be sound and correct. Consequently, we shall weave some of its analysis into our own.
Analysis
"The concept of self-defense emerged in the law as a recognition of a 'primary impulse' that is an 'inherent right' of all human beings." State v. Moore , 363 N.C. 793, 796, 688 S.E.2d 447, 449 (2010) (quoting State v. Holland , 193 N.C. 713, 718, 138 S.E. 8, 10 (1927) ). The principles of the two types of self-defense-perfect and imperfect-"are well established." State v. Reid , 335 N.C. 647, 670, 440 S.E.2d 776, 789 (1994). A defendant is entitled to an instruction on perfect self-defense as an excuse for a killing when the evidence presented at trial tends to show that, at the time of the killing:
(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and
(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and
(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and
(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably **308 appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.
State v. Bush , 307 N.C. 152, 158-59, 297 S.E.2d 563, 568 (1982) (quoting *484 State v. Norris , 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981) (italics omitted)), habeas corpus granted sub nom. Bush v. Stephenson , 669 F. Supp. 1322 (E.D.N.C. 1986), aff'd per curiam , 826 F.2d 1059 (4th Cir. 1987) (unpublished); see also State v. Watson , 338 N.C. 168, 179-80, 449 S.E.2d 694, 701 (1994) (quoting State v. McAvoy , 331 N.C. 583, 417 S.E.2d 489 (1992) ), cert. denied , 514 U.S. 1071, 115 S.Ct. 1708, 131 L.Ed.2d 569 (1995), disavowed in part in State v. Richardson , 341 N.C. 585, 461 S.E.2d 724 (1995). The doctrine of imperfect self-defense applies when the evidence supports a determination that only the first two elements in the preceding quotation existed at the time of the killing, in which case the defendant would be guilty of the lesser included offense of voluntary manslaughter. State v. Locklear , 349 N.C. 118, 154-55, 505 S.E.2d 277, 298 (1998), cert. denied , 526 U.S. 1075, 119 S.Ct. 1475, 143 L. Ed. 2d 559 (1999). Therefore, for a defendant to establish entitlement to an instruction on perfect or imperfect self-defense,
two questions must be answered in the affirmative: (1) Is there evidence that the defendant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and (2) if so, was that belief reasonable? If both queries are answered in the affirmative, then an instruction on self-defense must be given. If, however, the evidence requires a negative response to either question, a self-defense instruction should not be given.
Moore , 363 N.C. at 796, 688 S.E.2d at 449 (quoting Bush , 307 N.C. at 160-61, 297 S.E.2d at 569 ). That is, when "there is no evidence from which a jury could reasonably find that defendant, in fact, believed it to be necessary to kill his adversary to protect himself from death or great bodily harm, defendant is not entitled to have the jury instructed on self-defense." Reid , 335 N.C. at 671, 440 S.E.2d at 789 (citing Bush , 307 N.C. at 161, 297 S.E.2d at 569 ).
Defendant contends in the case sub judice that the trial court erred by refusing to instruct the jury on self-defense. Defendant argues that the evidence presented at trial-namely, Toler's (1) aggressiveness, (2) verbal and physical threats against defendant, and (3) attack on defendant with a brick fragment, a beer bottle, and a pocketknife-entitled defendant to instructions on perfect and imperfect self-defense because he possessed reasonable fear of death or great bodily harm such that **309 a jury "could have found ... that, at the time he administered the fatal wound with his knife, he believed it was necessary to kill or seriously injure Toler in order to save himself." This argument is unpersuasive.
The evidence, taken in the light most favorable to defendant, fails to manifest any circumstances existing at the time defendant stabbed Toler which would have justified an instruction on either perfect or imperfect self-defense. Despite his extensive testimony recounting the entire transaction of events from his own perspective, defendant never represented that Toler's actions in the moments preceding the killing had placed defendant in fear of death or great bodily harm such that defendant reasonably believed that it was necessary to fatally stab Toler in order to protect himself. On the other hand, defendant's own testimony undermines his argument that any self-defense instruction was warranted because, as the Court of Appeals majority correctly noted in its opinion, this Court's previous determinations have clear and direct applicability to defendant's contentions so as to eliminate his eligibility for his requested jury charge language.
The lower appellate court cited: (1) our decision in State v. Blankenship , 320 N.C. 152, 155, 357 S.E.2d 357, 359 (1987), for the principle that "a defendant cannot benefit from a self-defense instruction where he claims that the killing was accidental", Harvey , --- N.C. App. ----, 817 S.E.2d 500, 2018 WL 3734234, at *3 (2018) (unpublished); (2) our determination in State v. Lyons , 340 N.C. 646, 459 S.E.2d 770 (1995), for the premise that "defendant's self-serving statement that he was 'scared' is not evidence that defendant formed a belief that it was necessary to kill in order to save himself", id . at *4 (quoting Lyons , 340 N.C. at 662, 459 S.E.2d at 779 ); and (3) our declaration in State v. Williams , 342 N.C. 869, 873, 467 S.E.2d 392, 394 (1996), for the point that a self-defense *485 instruction is not required where defendant fired his pistol in order to get the murder victim and others to retreat, id . at *3. After viewing this Court's rulings in these cases as controlling, the Court of Appeals majority vividly demonstrated defendant's lack of entitlement to a self-defense instruction by quoting from an extensive passage of defendant's testimony elicited on his direct examination during which defendant twice expressly referred to his act of stabbing Toler as "the accident," explicitly stated that his purpose in going back in the trailer and picking up that knife was "[b]ecause I was scared he [Toler] was going to try and hurt me," and definitively represented that what he sought to do with the knife was "to make him [Toler] leave." Id . at *4.
We agree with the Court of Appeals' view of defendant's testimony at trial regarding this issue:
**310 [Defendant's] testimony fails to satisfy the requirements for an instruction on self-defense because it does not establish that (1) Defendant was actually being attacked by Toler such that he actually feared great bodily harm or death as a result of Toler's actions; and (2) he inflicted the fatal blow to Toler in attempt to protect himself from such harm ... Defendant never clearly testified that he feared he was in such danger as a result of Toler's actions with the pocketknife in the moments preceding the stabbing. Nor did he ever testify as to facts demonstrating that such a fear would have been reasonable-i.e., that Toler lunged at him with the pocketknife, that Toler made any stabbing motions with the pocketknife, or that the pocketknife was even pointed in Defendant's direction. ...
Defendant's testimony also fails to demonstrate that his fear of such harm caused him to inflict that fatal blow to Toler's chest. Indeed, Defendant's failure to expressly admit to stabbing Toler with his knife further undercuts his ability to argue that the stabbing was committed as an act of self-defense.
Id . at *6. Defendant's own depictions of his act of killing Toler as an accident, his decision to obtain the knife due to being motivated by fear, and his intention to use the knife in order to persuade Toler to leave defendant's residential premises all operate to clearly invoke the application of our holdings in Blankenship , Lyons , and Williams so as to establish that it was not appropriate for defendant in the present case to receive the benefit of an instruction on self-defense.
In assessing defendant's contention that the trial court erred in failing to grant his request to instruct the jury on the affirmative defense of self-defense, and in evaluating the applicability of the principles of perfect and imperfect self-defense to the facts of the instant case in light of the relevant case law, we agree with the Court of Appeals' determination that the requirements for a jury instruction on self-defense do not exist in this case. Under Bush , defendant is not entitled to an instruction on perfect self-defense, and in light of Locklear , defendant is not eligible for an instruction on imperfect self-defense. Defendant has failed to satisfy the threshold requirements of Moore and Reid , both of which required defendant to present evidence that he formed a reasonable belief that it was necessary for him to fatally stab Toler in order for defendant to protect himself from death or great bodily harm, because there is no evidence from which a jury could reasonably make such a finding so as to entitle defendant to have the jury to be instructed on self-defense.
**311 Conclusion
We conclude that the trial court did not err in declining defendant's request to instruct the jury on either the affirmative defense of perfect self-defense or imperfect self-defense. Defendant received a fair trial, free from error. Accordingly, this Court affirms the decision of the Court of Appeals.
AFFIRMED.
Justice DAVIS did not participate in the consideration or decision of this case.

Defendant's first name is spelled "Alphonso" in the trial transcript. For purposes of continuity and to avoid confusion, this opinion retains the spelling of defendant's name as shown in the Court of Appeals opinion and the record on appeal.

Defendant referred to the pocketknife in his testimony as a "little bitty, black pocketknife about two fingers long."

Witnesses testified that the knife resembled "an iron pipe with a blade on the end of it."

Defendant did not request an instruction based on the "castle doctrine" as set forth in N.C.G.S. §§ 14-51.2(b) or 14-51.3(a)(1). Defendant's counsel, to the contrary, expressly stated to the trial court that such an instruction was not warranted under the circumstances of this case. Therefore, the applicability of the castle doctrine is not before us.