An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-298

Filed 18 March 2026

Buncombe County, Nos. 22CR368033-100, 23CR000063-100

STATE OF NORTH CAROLINA

v.

GODIET CORRAL

Appeal by defendant from judgments entered 12 March 2024 by Judge Karen Eady-Williams in Buncombe County Superior Court. Heard in the Court of Appeals 27 January 2026.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Taylor H. Crabtree, for the State.*

> *Stephen G. Driggers for defendant-appellant.*

ZACHARY, Judge.

Defendant Godiet Corral appeals from the trial court's judgments entered upon a jury's verdicts finding him guilty of two counts of first-degree murder. On appeal, Defendant argues, with regard to the female victim, that "[t]he trial court erred by failing to instruct the jury on the law of self-defense" and by failing to instruct on the lesser-included offense of voluntary manslaughter based on a theory of imperfect self-

defense. After careful review, we conclude that the trial court did not err in its instructions to the jury.

## I.     Background

Defendant's case came on for jury trial on 4 March 2024 in Buncombe County Superior Court.

The evidence presented at trial, when viewed in the light most favorable to Defendant, tended to show the following: On 19 December 2022, Cody Dockins arranged a ride to a hotel for himself and Defendant with Bryan Khopkar. After Mr. Khopkar arrived, Defendant approached the vehicle and saw Sandy Torrey, who was seated in the front passenger seat, "holding a gun" and showing it to Mr. Khopkar. Defendant knocked on the car window and "startled them." Ms. Torrey "tucked the gun under her legs" while Mr. Khopkar "rolled the window down" and confirmed that they were the arranged ride. Defendant and Mr. Dockins got into the car. Mr. Khopkar drove and Ms. Torrey sat in the front passenger seat, while Defendant and Mr. Dockins sat in the rear passenger seats.

During the drive, Mr. Khopkar "start[ed] kind of interrogating" Mr. Dockins and Defendant. He asked Defendant about himself and who was going to be at the hotel, and Defendant testified that he "didn't know where the hostility was coming from." Mr. Khopkar then "start[ed] screaming, 'Get out,' " "pumped the brakes," and "messed with the gas." The situation escalated and Mr. Khopkar stated: "You know I got my gun." Eventually, Mr. Khopkar abruptly pulled into a gas station parking lot

and, as Defendant was preparing to exit the vehicle, Mr. Khopkar "pull[ed] out the gun" and "pointed [it] directly at" Defendant. Defendant then shot him four times "[b]ecause [he] thought [Mr. Khopkar] was going to shoot [him]." Mr. Khopkar died from the resulting injuries.

Following the first shooting, Defendant exited the car. Ms. Torrey was "screaming and yelling" when Defendant stood at her car window and shot her three times from a distance of roughly six to twelve inches. Ms. Torrey "died from a gunshot wound in the head." Defendant testified on cross examination that he did not "know if she was threatening [him]" when he shot her.

The gas station surveillance cameras recorded the shootings.

When law enforcement officers arrived and searched the vehicle, they found a gun in Mr. Khopkar's lap and its holster in the driver's side door; they did not find a second gun in the car.

Defendant was charged with two counts of first-degree murder. During the charge conference, defense counsel requested that the trial court deliver a self-defense instruction for both first-degree murder charges.[1] Over defense counsel's objection, the court granted the request as to Mr. Khopkar but denied the request as to Ms. Torrey.

---

[1] Our General Statutes require that a defendant "[g]ive notice to the State of the intent to offer at trial a defense of . . . self-defense." N.C. Gen. Stat. § 15A-905(c)(1) (2023). Here, Defendant properly filed "notice of his intent to offer at trial the defense of self-defense."

On 12 March 2024, the jury returned its verdicts finding Defendant guilty of both counts of first-degree murder. That same day, the trial court entered judgments sentencing Defendant to two consecutive terms of life imprisonment without the possibility of parole in the custody of the North Carolina Department of Adult Correction.

Defendant gave oral notice of appeal.

## II.     Discussion

Defendant argues that, as to the killing of Ms. Torrey, the trial court erred by not instructing the jury "on the law of self-defense" and "on the law of voluntary manslaughter on a theory of imperfect self-defense." We disagree.

### A.  Standard of Review

"Where the defendant preserves his challenge to jury instructions by objecting at trial, we review the trial court's decisions regarding jury instructions de novo." *State v. Hope*, 223 N.C. App. 468, 471, 737 S.E.2d 108, 111 (2012) (cleaned up), *disc. review denied*, 366 N.C. 438, 736 S.E.2d 493 (2013). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Parks*, 264 N.C. App. 112, 114, 824 S.E.2d 881, 884 (2019) (cleaned up).

### B.  Jury Instruction on Perfect or Imperfect Self-Defense

Defendant asserts, with regard to the killing of Ms. Torrey, that "[t]he lack of a self-defense instruction deprived the jury of the ability to decide the issue of whether [Defendant]'s actions were lawful."

"The trial court is required to instruct the jury on all substantial features of a case. Any defense raised by the evidence is deemed a substantial feature of the case." *State v. Stephens*, 275 N.C. App. 890, 893, 853 S.E.2d 488, 492 (2020) (cleaned up). "For a particular defense to result in a required instruction, there must be substantial evidence of each element of the defense when viewing the evidence in a light most favorable to the defendant." *Id.* at 893–94, 853 S.E.2d at 492 (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 894, 853 S.E.2d at 492 (cleaned up).

"Self-defense is an affirmative defense." *State v. Irabor*, 262 N.C. App. 490, 494, 822 S.E.2d 421, 424 (2018). "Where competent evidence of self-defense is presented at trial, the defendant is entitled to an instruction on this defense, as it is a substantial and essential feature of the case, and the trial judge must give the instruction even absent any specific request by the defendant." *State v. Greenfield*, 375 N.C. 434, 440, 847 S.E.2d 749, 754 (2020) (cleaned up).

"First-degree murder is the unlawful killing—with malice, premeditation and deliberation—of another human being." *State v. Watlington*, 298 N.C. App. 584, 598, 916 S.E.2d 34, 46 (citation omitted), *disc. review denied*, 388 N.C. 524, 920 S.E.2d 859 (2025).

"North Carolina law recognizes both perfect and imperfect self-defense." *Stephens*, 275 N.C. App. at 894, 853 S.E.2d at 493 (cleaned up). "The principles of the two types of self-defense—perfect and imperfect—are well established." *State v. Harvey*, 372 N.C. 304, 307, 828 S.E.2d 481, 483 (2019) (cleaned up).

The trial court must instruct the jury "on perfect self-defense as an excuse for a killing when the evidence presented at trial tends to show that[ ] at the time of the killing":

> (1) [I]t appeared to [the] defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and
>
> (2) [the] defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and
>
> (3) [the] defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and
>
> (4) [the] defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*Id.* at 307–08, 828 S.E.2d at 483 (citation omitted).

"The doctrine of imperfect self-defense applies when the evidence supports a determination that only the first two elements" of perfect self-defense "existed at the time of the killing, in which case the defendant would be guilty of the lesser[-]included offense of voluntary manslaughter." *Id.* at 308, 828 S.E.2d at 484.

Accordingly, in order for a defendant to be entitled to a jury instruction "on perfect or imperfect self-defense, two questions must be answered in the affirmative":

> (1) Is there evidence that the defendant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and (2) if so, was that belief reasonable? If both queries are answered in the affirmative, then an instruction on self-defense must be given. If, however, the evidence requires a negative response to either question, a self-defense instruction should not be given.

*Id.* (cleaned up).

At the charge conference, defense counsel requested an instruction on self-defense as to both first-degree murder charges, which the trial court granted as to Mr. Khopkar but denied as to Ms. Torrey. The court explained its decision:

> [T]he video speaks to the action of Mr. Khopkar being a threat. The video does not speak to any actions of Ms. Torrey being a threat, and no one has said she made any threatening statements. The video doesn't show any threatening gestures.
>
> That's what I'm looking for. Where is the imminent danger for [Defendant] to justify his shooting her once – shooting her three times once he's already out of the vehicle? Where does that come from?
>
> And that's what I'm trying to see. Is he entitled to a self-defense instruction or not? And it's a fact-intensive inquiry, and that's what I'm trying to dissect and digest, is where are the facts that would entitle him to a self-defense instruction as it relates to Ms. Torrey?
>
> I don't see it. I just don't. And when I got . . . the proposed instructions from [the State], that was my initial thought. Just based on my recollection of the facts, that . . .

[D]efendant would not be entitled to a self-defense instruction as it relates to Ms. Torrey.

. . . I wanted to hear more to see if there was something I was missing. I wanted to see more, and I'm not seeing anything that aligns with self-defense.

Therefore, . . . [D]efendant's request for a self-defense instruction for Ms. Torrey, which is the second count of homicide, that request will be denied, and . . . [D]efendant's objection will be noted for the record.[2]

Defendant contends that his testimony at trial "was sufficient to support an inference that he was afraid [Ms.] Torrey was about to shoot him":

A. At the point I shot [Mr. Khopkar], and then I go to get out. And I see [Mr. Dockins] going to get out. I tell him to watch out because I didn't know if [Mr. Khopkar] was still alive or what, and then I noticed [Ms. Torrey] start moving and then –

Q. So why did you tell him to watch out?

A. Because I knew [Ms. Torrey] had a gun, and [Mr. Khopkar] had just pointed one at me.

Q. How did you know [Ms. Torrey] had a gun?

A. I seen one earlier.

Q. So you tell [Mr. Dockins] to watch out, you get out, and then what happens?

A. I see [Ms. Torrey] turn around, and then her hand goes down. So I shot her.

---

[2] The video to which the trial court repeatedly refers appears to be State's Exhibit No. 1—video footage retrieved from several surveillance cameras "from the system of the gas station" where the shootings occurred—which the court admitted into evidence and which was published to the jury.

Q. And why did you shoot her?

A. Because I thought she was going to shoot me.

This testimony serves as "evidence that . . . [D]efendant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm." *Harvey*, 372 N.C. at 308, 828 S.E.2d at 484 (citation omitted). Thus, our inquiry is limited to whether Defendant's belief that it was necessary to kill Ms. Torrey was indeed "reasonable." *Id.* (citation omitted). We conclude that it was not.

Defendant testified that when he first approached the vehicle, he saw Ms. Torrey holding a gun and putting it under the seat. When the vehicle was parked at the gas station parking lot, Defendant saw Mr. Khopkar "pulling out the gun." Because Defendant "thought [Mr. Khopkar] was going to shoot [him]," he shot and killed Mr. Khopkar. After Defendant exited the car, he shot and killed Ms. Torrey, who was unarmed.

There was no evidence presented that Ms. Torrey displayed any threatening behavior toward Defendant. Indeed, Defendant testified on cross examination that he did not "know if she was threatening [him]" when he shot her. Moreover, Mr. Khopkar possessed the only gun in the car, which was found in his lap when law enforcement officers searched the vehicle.

Defendant cites *State v. Myers*, 296 N.C. App. 524, 909 S.E.2d 378 (2024), and *State v. Coley*, 375 N.C. 156, 846 S.E.2d 455 (2020), in support of his assertion that

his belief was reasonable. However, Defendant's reliance on these opinions is misplaced because the evidence in both showed that the victim had acted in a threatening manner toward the defendant and therefore, the defendant's belief that it was necessary to kill the decedent was reasonable. *See Myers*, 296 N.C. App. at 526, 909 S.E.2d at 380 (where the victim was holding a gun and appeared to have just shot at a third party when the defendant shot him); *Coley*, 375 N.C. at 157, 846 S.E.2d at 456 (where the victim repeatedly entered the defendant's home and physically assaulted him).

The facts presented by the instant case more closely align with those presented in *State v. Pittman*, 207 N.C. App. 205, 699 S.E.2d. 649 (2010). In *Pittman*, the defendant and the victim shared a long-standing animosity. *Id.* at 213, 699 S.E.2d at 655. On the day of the killing, the defendant "noticed out of the corner of his eye that [the victim] was moving towards him while reaching behind his back for an unknown object." *Id.* at 214, 699 S.E.2d at 655 (cleaned up). Because the defendant "thought [the victim] might harm him with a weapon and was afraid for his life," he repeatedly shot the victim and killed him. *Id.* at 211, 214, 699 S.E.2d at 653, 655. This Court noted that, regardless of prior threats, "the record [wa]s devoid of any evidence that [the victim] ever threatened to kill [the d]efendant or that [the victim] ever attempted to actually harm [the d]efendant." *Id.* at 215, 699 S.E.2d at 656. We concluded that "[a]ssuming, for purposes of discussion, that [the d]efendant actually believed that it was necessary to shoot [the victim] in order to prevent [the victim] from attacking

him, the record evidence was insufficient to permit a reasonable jury to conclude that any such belief was a reasonable one." *Id.* at 214, 699 S.E.2d at 655.

Likewise, here, there must have been evidence presented that Defendant not only "formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm," but also that this belief was "reasonable." *Harvey*, 372 N.C. at 308, 828 S.E.2d at 484 (citation omitted). Viewing the evidence in the light most favorable to Defendant, there was no evidence presented that Defendant believed it was reasonably necessary to kill Ms. Torrey to save himself from death or great bodily harm. Accordingly, the trial court did not err by declining to deliver a self-defense instruction as to the killing of Ms. Torrey. *See id.*

## C. Jury Instruction on Voluntary Manslaughter Based on Imperfect Self-Defense

Defendant further argues that "[b]ecause it was error for the trial court to deny the instruction on self-defense as to [Ms.] Torrey . . . it also was error for the trial court not to instruct on voluntary manslaughter on a theory of imperfect self-defense."[3] However, because there was no evidence presented that Defendant's belief that it was necessary to shoot Ms. Torrey in self-defense was reasonable, the court

---

[3] In his reply brief, Defendant also argues that he was "entitled to an instruction on the theory of second-degree murder" with regard to the killing of Ms. Torrey. We note that the trial court instructed the jury on second-degree murder as to her killing.

did not err by declining to instruct the jury on voluntary manslaughter based on imperfect self-defense.

"Voluntary manslaughter is defined as an intentional killing without premeditation, deliberation or malice either in the heat of passion or in the exercise of imperfect self-defense where excessive force under the circumstances was used." *State v. Coley*, 193 N.C. App. 458, 467, 668 S.E.2d 46, 52–53 (2008) (cleaned up), *aff'd*, 363 N.C. 622, 683 S.E.2d 208 (2009).

"Voluntary manslaughter is a lesser[-]included offense of first-degree murder." *Watlington*, 298 N.C. App. at 598–99, 916 S.E.2d at 47 (citation omitted). "[A]n instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find [the] defendant guilty of the lesser offense and to acquit him of the greater." *State v. Juarez*, 369 N.C. 351, 357, 794 S.E.2d 293, 299 (2016) (cleaned up). "The test is whether there is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense." *State v. Guin*, 282 N.C. App. 160, 165, 870 S.E.2d 285, 290 (cleaned up), *disc. review denied*, 382 N.C. 326, 876 S.E.2d 281 (2022). "When the State's evidence establishes each and every element of first-degree murder and there is no evidence to negate these elements, it is proper for the trial court to exclude a lesser-included offense from the jury's consideration." *Id.* at 166, 870 S.E.2d at 290 (cleaned up). Indeed, "[w]here there is no evidence supporting a lesser[-]included offense, it is error for the trial court to instruct the jury on such." *State v.*

*Cruz*, 203 N.C. App. 230, 236, 691 S.E.2d 47, 51, *aff'd*, 364 N.C. 417, 700 S.E.2d 222 (2010).

"In order to receive an instruction on voluntary manslaughter, there must be evidence tending to show a killing was committed in the heat of passion suddenly aroused by adequate provocation, or in the imperfect exercise of the right of self-defense." *State v. Simonovich*, 202 N.C. App. 49, 53, 688 S.E.2d 67, 71 (2010) (cleaned up). This Court has concluded that a jury instruction "regarding voluntary manslaughter, based on a theory of imperfect self-defense, is not required unless evidence was introduced tending to show that at the time of the killing, the defendant *reasonably* believed it necessary to kill the victim in order to save himself from imminent death or great bodily harm." *Coley*, 193 N.C. App. at 467–68, 668 S.E.2d at 53 (cleaned up). We "consider the facts in the light most favorable to [the] defendant to determine if the evidence presented at trial was sufficient to warrant an instruction regarding voluntary manslaughter based on imperfect self-defense." *Id.* at 468, 668 S.E.2d at 53.

In the present case, the court determined that there was no "evidence that was introduced that support[ed] a finding of voluntary manslaughter or imperfect self-defense." Over Defendant's objection, the court declined to include voluntary manslaughter on the verdict sheet and did not instruct the jury on voluntary manslaughter as to Ms. Torrey.

As determined above, no evidence was introduced that tended to show that Defendant's belief that it was necessary to shoot Ms. Torrey in self-defense was reasonable. Thus, with regard to the killing of Ms. Torrey, it was not error for the trial court to decline to instruct the jury on voluntary manslaughter based on a theory of imperfect self-defense.

Even assuming, *arguendo*, that it would have been proper for the trial court to instruct the jury on voluntary manslaughter based on a theory of imperfect self-defense, any error from the failure to include this instruction would have been harmless error.

In *State v. Lyons*, the jury found the defendant guilty of first-degree murder. 340 N.C. 646, 652, 459 S.E.2d 770, 773 (1995). On appeal, the defendant argued that the trial court erred by failing to instruct the jury on voluntary manslaughter based on the theory of imperfect self-defense. *Id.* at 663, 459 S.E.2d at 779. Our Supreme Court determined that "the trial court properly instructed the jury on first-degree and second-degree murder" and noted that "[a]fter deliberations, the jury returned with a verdict of guilty of first-degree murder." *Id.* at 664, 459 S.E.2d at 779. The Court reasoned that: "Since the jury rejected second-degree murder, it would also have rejected the lesser offense of voluntary manslaughter." *Id.*

Similarly, in the instant case, the trial court properly instructed the jury on both first-degree and second-degree murder as to the killing of Ms. Torrey. The jury returned a verdict finding Defendant guilty of the first-degree murder of Ms. Torrey.

Hence, even if the trial court had erred by not instructing the jury on voluntary manslaughter based on the theory of imperfect self-defense, such error would have been harmless. *See State v. Young,* 324 N.C. 489, 492, 380 S.E.2d 94, 96 (1989) (concluding that even if the trial court had erred by not instructing the jury on involuntary manslaughter, "the error was harmless because the trial court gave correct instructions as to possible verdicts on murder in the first and second degrees and the jury found the defendant guilty of the greater crime of murder in the first degree upon a theory of premeditation and deliberation").

There was no evidence presented in support of Defendant's contention that his belief that it was necessary to shoot Ms. Torrey in self-defense was reasonable. *See Coley*, 193 N.C. App. at 467–68, 668 S.E.2d at 53. "We therefore hold the trial court did not err by denying [D]efendant's request to submit a jury instruction regarding voluntary manslaughter based on a theory of imperfect self-defense." *Id.* at 468, 668 S.E.2d at 53.

### III. Conclusion

For the foregoing reasons, we conclude that, as to the killing of Ms. Torrey, the trial court did not err by declining to deliver an instruction on the defense of perfect or imperfect self-defense or an instruction on the lesser-included offense of voluntary manslaughter based on the theory of imperfect self-defense.

NO ERROR.

Judges ARROWOOD and WOOD concur.

Report per Rule 30(e).