STATE OF NORTH CAROLINA v. WANDA GRAYBEAL SHYTLE

No. 542A87

(Filed 4 January 1989)

**1. Criminal Law § 29— competency to stand trial—ability to assist in defense**

A defendant does not have to be at the highest stage of mental alertness to be competent to stand trial. If a defendant can confer with his or her attorney so that the attorney may interpose any available defenses for him or her, the defendant is able to assist his or her defense in a rational manner.

**2. Criminal Law § 29— competency to stand trial—brain injury—ability to assist in defense—sufficient evidence**

There was evidence from which the trial court could find that defendant was able to assist in her defense in a rational manner to two charges of murder and one of felonious assault, although she suffered brain damage from a self-inflicted gunshot wound which impaired her emotional response to situations in which she found herself, where two psychiatrists testified that defendant's disorder does not prevent her from understanding her legal situation and assisting her lawyer in her defense. N.C.G.S. § 15A-1001(a).

**3. Criminal Law § 29— competency to stand trial—brain injury—understanding of nature of proceedings—comprehension of own situation—sufficient evidence**

Evidence that defendant did not appreciate the gravity of the situation she was in at the time of the trial because of brain damage from a self-inflicted gunshot wound did not require the trial court to find that she did not understand the nature and object of the proceedings against her or that she could not comprehend her own situation in reference to the proceedings against her where there was evidence that defendant had an I.Q. within the normal range and that she knew what the charges were and what could happen to her if she was convicted. The fact that defendant's situation did not bother her does not mean that she did not comprehend it.

**4. Criminal Law § 75.14— mental capacity to testify—capacity to confess**

A defendant who has the mental capacity to testify has the requisite mental capacity to make a confession.

**5. Criminal Law § 75.14— brain injury—mental capacity to confess**

Defendant had the requisite mental capacity to confess, although she suffered brain damage from a self-inflicted gunshot wound which impaired her emotional responses, where there was no dispute that defendant was capable of expressing herself concerning the matter so that she could be understood, and there was no evidence that defendant was incapable of understanding the duty of a witness to tell the truth. N.C.G.S. § 8C-1, Rule 601.

**6. Criminal Law § 75.14— brain injury—inability to appreciate import of confession—admissibility of confession**

Defendant's inability to fully appreciate the import of her confession because of a brain injury from a self-inflicted gunshot wound would not render

her confession inadmissible if it otherwise has the indicia of reliability, since defendant did not have to know all the legal consequences of making a confession and did not have to be made aware of all facts which might influence her decision in order for the confession to be admitted into evidence.

**7. Criminal Law § 5.1— insanity issue—sufficient evidence to support jury's verdict**

Although two expert witnesses stated opinions that defendant did not know right from wrong at the time of two murders and a felonious assault, the jury was not required to believe the expert witnesses and could find that defendant was legally sane upon the basis of an investigating officer's testimony that defendant had "very normal" demeanor, appeared to be oriented to time, and was responsive to questions. Therefore, the trial court did not err in refusing to set aside the verdict as being against the greater weight of the evidence on the insanity issue.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment of the Superior Court, RUTHERFORD County, imposing consecutive life sentences. The defendant's motion to bypass the Court of Appeals as to a sentence of less than life was allowed. Heard in the Supreme Court 16 November 1988.

The defendant was tried for her life on two charges of first degree murder. She was also tried in the same trial for assault with a deadly weapon with intent to kill inflicting serious injury. The defendant lived with her husband and her fifteen-year-old daughter and her eleven-year-old son. In the early morning hours of 11 December 1986 the defendant shot and killed her husband and her son. She also shot and seriously injured her daughter. Immediately after shooting her daughter the defendant walked to some woods behind her home and shot herself in the head.

Prior to the trial, Judge Lamar Gudger held a hearing to determine the defendant's competency to stand trial. The court, without objection, considered written reports by Dr. Bob Rollins and Dr. Patricio Lara, psychiatrists at Dorothea Dix Hospital who had examined the defendant, and Dr. Thomas M. LaBreche, Ph.D., a clinical neuropsychologist, who had examined the defendant. The court also heard testimony from Dr. Rollins.

The reports and testimony revealed that as a result of the self-inflicted gunshot wound to the head and the resulting surgery, the defendant had suffered damage to her brain which impaired her emotional response to situations in which she found herself. Her I.Q. was within the normal range and she had a good

recall of the events which occurred on 11 December 1986. How-
ever, she did not, in her altered mental state, appreciate the
seriousness of those events. Dr. Rollins said in his report that the
defendant's "approach to her situation was superficial, somewhat
silly, and not in keeping with the seriousness of her situation."
Dr. Lara noted that the defendant's "[m]ental status examination
has continued to present her with somewhat shallow affects
demonstrating very little emotional reaction to the discussion of
matters of intense meaning. . . . She continued to address her sit-
uation in a matter-of-fact manner with no display of emotional
response and with evidence of a tendency to rationalize all
issues."

Dr. Rollins concluded that "Mrs. Shytle is capable of pro-
ceeding to trial in that her disorder does not prevent her from
understanding her legal situation and cooperating with her at-
torney." Dr. Lara concluded, "[t]hese problems do not appear to
prevent her from being able to assist her lawyers in the prepara-
tion of her defense, especially when she can be adequately advis-
ed and instructed with the assistance of her lawyers. It is my opi-
nion that this patient is at present capable to proceed to trial."
On the other hand, Dr. LaBreche concluded that "her affective or
emotional response to her current situation and past behavior (i.e.
alleged charges) cannot be linked to factual understanding of her
circumstance. Her ability to comprehend the meaning or signifi-
cance of actions (e.g. alleged murders and attempted murder and
attempted suicide) is impaired. In contrast to the first two foren-
sic evaluations, it is my opinion that Mrs. Shytle is not competent
to proceed to trial because her affective appreciation of events
has been lost."

Judge Gudger found that the defendant was competent to be
tried. A second competency hearing was held before Judge James
U. Downs at which the same evidence which had been used at the
first hearing was again introduced. Judge Downs found the de-
fendant competent to stand trial.

The defendant made a motion to suppress a statement she
had made to a deputy sheriff and a pre-trial hearing was held on
this motion. The evidence at this hearing showed that the defend-
ant was carried to the Rutherford County Hospital a short time
after she had been shot. At that time she was interviewed by

Clarence Simmons, a deputy sheriff with the Rutherford County Sheriff's Department. He testified that the defendant had a "very normal" demeanor, that she seemed to be oriented to time and was responsive to questions, speaking in complete sentences. The emergency room physician testified that none of the medications given the defendant would have affected her mental capacity. During her interrogation by Mr. Simmons, the defendant waived her right to remain silent and her right to consult an attorney. She then made a statement to Mr. Simmons that she had shot her husband, her daughter, her son, and herself. The court made findings of fact in accordance with this evidence and overruled the defendant's motion to suppress her statement.

The defendant relied on insanity as a defense. Dr. Rollins and Dr. LaBreche testified at the trial that the defendant did not know the difference between right and wrong in relation to the shooting of her family members. The jury found the defendant guilty of the two first degree murders with which she was charged and of assault with a deadly weapon with intent to kill resulting in serious injury.

After a sentencing hearing the jury recommended that the defendant be sentenced to life in prison on each murder charge. The court imposed a life sentence for each murder conviction and a sentence of six years in prison for the assault conviction. All sentences are to be served consecutively. The defendant appealed.

*Lacy H. Thornburg, Attorney General, by Jane P. Gray, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by M. Patricia DeVine, Assistant Appellate Defender, for defendant appellant.*

WEBB, Justice.

The appellant, by her first assignment of error, challenges the holding of the court that she was competent to stand trial. N.C.G.S. § 15A-1001(a) provides:

No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in ref-

erence to the proceedings, or to assist in his defense in a rational or reasonable manner. This condition is hereinafter referred to as "incapacity to proceed."

The statute provides three separate tests in the disjunctive. If a defendant is deficient under any of these tests he or she does not have the capacity to proceed. *State v. McCoy*, 303 N.C. 1, 277 S.E. 2d 515 (1981); *State v. Jackson*, 302 N.C. 101, 273 S.E. 2d 666 (1981); *State v. Jenkins*, 300 N.C. 578, 268 S.E. 2d 458 (1980).

The defendant concedes that Dr. Rollins and Dr. Lara stated enough in their reports to support a finding that she was competent to stand trial. She says, however, that Dr. LaBreche made a deeper diagnosis and based on his testimony we should hold as a matter of law that she was not competent to stand trial. She contends, quoting Dr. LaBreche, that the question is, "if an individual's cognitive, reasoning ability is separated from basic emotional responses or affect, is this individual actually competent not only to aid in his own defense but also to proceed to trial as the same individual who committed the violation of the law?" The defendant argues that because a part of her brain which governs her emotion and the appreciation of the seriousness of her situation has been destroyed, her ability to exercise her will was so impaired that she failed all of the three tests which determine competency to stand trial. The defendant says she was not able (1) to understand the nature and object of the proceedings against her, (2) comprehend her own situation in reference to the proceedings, or (3) to assist in her defense in a rational or reasonable manner. The defendant contends the test is whether she could participate in her defense in a meaningful way.

In determining this question we are helped by *State v. Avery*, 315 N.C. 1, 337 S.E. 2d 786 (1985) and *State v. Cooper*, 286 N.C. 549, 213 S.E. 2d 305 (1975). In *Avery* the defendant suffered from a post traumatic stress syndrome as a result of service in the Vietnamese War. He also suffered from a self-inflicted gunshot wound to his head which had damaged a part of his brain which "controls affect and mood." The trial court found that although Avery's memory was impaired and his intellectual functions, judgment, and insight were limited that he was competent to stand trial. This Court found no error. In *Cooper* the defendant suffered from paranoid schizophrenia. He was required to take

medication three times a day in order to keep this condition in remission. We held that it was not error to find he was competent to stand trial.

[1, 2] We believe *Avery* and *Cooper* establish the proposition that a defendant does not have to be at the highest stage of mental alertness to be competent to be tried. So long as a defendant can confer with his or her attorney so that the attorney may interpose any available defenses for him or her, the defendant is able to assist his or her defense in a rational manner. It is the attorney who must make the subtle distinctions as to the trial. There was evidence from which the court could find the defendant was able to assist in her defense in a rational manner.

[3] The defendant argues that because she did not appreciate the gravity of the situation she was in at the time of the trial, that she did not understand the nature and object of the proceedings against her. There was evidence that the defendant had an I.Q. within the normal range and that she knew what the charges were and what could happen to her if she was convicted. If this did not worry or upset her because of her altered mental condition, it does not mean she did not understand these facts. The court could find from this and other evidence that the defendant understood the nature and object of the proceedings against her. For the same reasons the defendant contends that at the time of the trial she could not comprehend her own situation in reference to the proceedings. Again there was evidence from which the superior court could find to the contrary. If the defendant's situation did not bother her it does not mean she did not comprehend it. This assignment of error is overruled.

The defendant next assigns error to the admission into evidence of her confession. She contends it was error to admit this confession for two reasons. She says first that she did not have the requisite mental capacity to confess and second that the confession was not voluntarily, understandingly or knowingly made.

[4, 5] We deal first with the defendant's argument that she did not have the capacity to confess. If a defendant has the mental capacity to testify he or she has the requisite mental capacity to make a confession. *State v. Cooper,* 286 N.C. 549, 213 S.E. 2d 305 and *State v. Whittemore,* 255 N.C. 583, 122 S.E. 2d 396 (1961). N.C.G.S. § 8C-1, Rule 601 provides in part:

(a) General rule—Every person is competent to be a witness except as otherwise provided in these rules.

(b) Disqualification of witness in general—A person is disqualified to testify as a witness when the court determines that he is (1) incapable of expressing himself concerning the matter as to be understood, either directly or through interpretation by one who can understand him, or (2) incapable of understanding the duty of a witness to tell the truth.

There is no dispute that the defendant was capable of expressing herself concerning the matter so that she could be understood. There was no evidence that she was incapable of understanding the duty of a witness to tell the truth. The defendant would have been competent to testify and she was competent to confess.

[6] The defendant argues that, considering the totality of the circumstances, she could not fully appreciate the import of her confession and for this reason it was not knowingly, understandably, and voluntarily made. She does not argue that she was not fully advised of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694 (1966), or that she did not waive her rights. She says that because of her mental condition due to her brain damage, she could not fully appreciate the implications of her confession. A person does not have to know all the legal consequences of making a confession in order for the confession to be admitted into evidence. *State v. McRae*, 276 N.C. 308, 172 S.E. 2d 37 (1970). Nor must he or she be made aware of all facts which might influence his or her decision. *Moran v. Burbine*, 475 U.S. 412, 89 L.Ed. 2d 410 (1986); *State v. Reese*, 319 N.C. 110, 353 S.E. 2d 352 (1987). The defendant was properly found competent to confess. If she was not fully capable of appreciating the seriousness of the confession, this does not make it inadmissible if it otherwise has the indicia of reliability.

[7] In her last assignment of error the defendant contends it was error to deny her motion to set the verdict aside as against the greater weight of the evidence. A motion to set aside the verdict as against the weight of the evidence is addressed to the discretion of the trial judge and is reviewable on appeal only to determine if there has been an abuse of discretion. *State v. Hamm*, 299 N.C. 519, 263 S.E. 2d 556 (1980); *State v. Boykin*, 298 N.C. 687, 259

S.E. 2d 883 (1979), *cert. denied,* 446 U.S. 911, 64 L.Ed. 2d 264 (1980); *State v. Shepherd,* 288 N.C. 346, 218 S.E. 2d 176 (1975).

The defendant contends that all the evidence shows that she was insane and under this evidence there was no showing of motive or malice. For this reason, she argues that it was error not to set the verdict aside. There was ample evidence to support the verdicts of guilty. Dr. Rollins and Dr. LaBreche each testified that in his opinion the defendant did not know right from wrong in regard to the acts of 11 December 1986. Mr. Simmons testified the defendant had "very normal" demeanor and that she appeared to be oriented to time and was responsive to questions. The burden was on the defendant to prove insanity. *State v. Evangelista,* 319 N.C. 152, 353 S.E. 2d 375 (1987). The jury did not have to believe the expert witnesses. *State v. Jackson,* 308 N.C. 549, 304 S.E. 2d 134 (1983). The evidence supported the verdicts and it was not error to refuse to set them aside.

No error.